963 So.2d 1095 (2007)
Sandra Joyce BIRDSONG and Jimmy Ray Birdsong, Plaintiff-Appellant,
v.
HIRSCH MEMORIAL COLISEUM and Feld Entertainment, Inc. (Ringling Brothers), Defendant-Appellee.
No. 42,316-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2007.
*1096 Joseph William Hendrix, for Appellants.
David Daniel Palay, Jr., for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
DREW, J.
From a judgment sustaining Feld Entertainment, Inc.'s peremptory exception of no cause of action, Sandra Joyce and Jimmy Ray Birdsong appeal the dismissal of their action for damages. Exiting from an ice show, Mrs. Birdsong suffered injuries from a slip and fall accident in Hirsch Memorial Coliseum in Shreveport. The plaintiffs contend that Feld failed to protect its patrons from dangerous conditions which Feld knew or should have known existed. The judgment of the trial court is reversed and the matter is remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
This is the second appeal to this court involving this claim. In Birdsong v. Hirsch Memorial Coliseum, 39,101 (La. App.2d Cir.12/15/04), 889 So.2d 1232, 1233 (Birdsong I),[1] this court set out the facts:
On March 5, 2000, Sandra Birdsong, her granddaughter and some friends attended a "Disney On Ice" production at Hirsch Memorial Coliseum ("Hirsch"). Birdsong was seated in an upper level row, and at the conclusion of the hour-and-a-half program, she and her granddaughter descended the concrete steps while heading toward the exit. When Birdsong reached the bottom step, she slipped on something wet, fell, and injured her head, elbow and leg.
Birdsong and her husband sued Hirsch and the promoter, Feld Entertainment. Feld filed a cross-claim against the State Fair of Louisiana ("the Fair"), Hirsch, citing an agreement between them for the Fair to be responsible for keeping the arena safe from hazards.
Mrs. Birdsong and her husband alleged that both Hirsch and Feld were negligent in the maintenance and inspection of the premises on the night of the accident. Hirsch moved for summary judgment, claiming that there was insufficient evidence to satisfy the burden of proof that Hirsch was negligent. Hirsch contended that Mrs. Birdsong could not prove the origin, duration, or the cause of the spill because there were no witnesses. The trial court granted Hirsch's motion for summary judgment, but this court later reversed the judgment in Birdsong I, supra. This record reveals the Birdsongs *1097 and Hirsch Memorial Coliseum settled their dispute and contains an order dismissing Hirsch from the action, while reserving the Birdsongs' rights against Feld.
The trial court sustained Feld's peremptory exception of no cause of action, concluding that the contract stated that Hirsch was solely responsible for the maintenance and safety of the premises. Therefore, Feld owed no duty to inspect or clean the area. In oral reasons, the trial court cited ¶ 2(l) of the contract, which stated that the State Fair was responsible for providing employees and controlling a number of things: "including, but not limited to, the cleaning of the entire spectator premises before moving in, during and prior to each performance." Finding that the State Fair (Hirsch) had the responsibility and the ability to clean, the court noted that Feld could not "have done it if they had wanted to under this contract."

PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION
A peremptory exception of no cause of action questions whether the law extends a remedy to anyone under the factual allegations of the petition. Hayes v. Gallagher Bassett Services, Inc., 41,579 (La.App.2d Cir.12/13/06), 945 So.2d 911, writ denied, XXXX-XXXX (La.3/30/07), 953 So.2d 73. In Dejoie v. Medley, 41-974, 41,333 (La.App.2d Cir.12/20/06), 945 So.2d 968, this court explained that the exception is triable on the face of the petition, each well-pled fact of which must be accepted as true. There is no requirement that the court accept as true any conclusions of law alleged in the petition. No evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931.
Appellate courts conduct a de novo review of a district court's ruling sustaining an exception of no cause of action, because the exception raises a question of law and the district court's decision should be based only on the sufficiency of the petition. An exception of no cause of action is sustained only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. If the petition states a cause of action on any ground or portion of the demand, the exception should be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Badeaux v. Southwest Computer Bureau, Inc., XXXX-XXXX (La.3/17/06), 929 So.2d 1211.
La. C.C.P. art. 934 states that:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.
In their initial petition, the Birdsongs named as defendants Hirsch Memorial Coliseum and Feld Entertainment, Inc. (Ringling Brothers). The plaintiffs stated that, at the conclusion of the program, Mrs. Birdsong and her granddaughter descended the stairs to meet a friend. At the last step, Mrs. Birdsong slipped on something wet and fell, injuring her head, elbow, and leg. She went by ambulance to Willis-Knighton Medical Center Emergency Room. In addition to Mrs. Birdsong's injuries, which were characterized as severe, disabling and permanent, the Birdsongs sought to recover for Mr. Birdsong's *1098 loss of consortium. Plaintiffs asserted that the defendants were negligent in failing to post a warning sign concerning the dangerous condition of the steps, in neglecting to use reasonable care to have hazard-free premises, in not inspecting the premises, and in committing any other acts of negligence proven at trial. In an amended petition, the Birdsongs asserted that Mrs. Birdsong was hypervigilant and used the utmost care in going down the steps. The plaintiffs also added the following assertions of defendants' negligence by failure:
 to warn patrons of unreasonable risk of harm due to condition of the facility;
 to properly clean up to maintain a safe environment;
 to implement a proper plan to inspect and remove hazardous and unreasonably dangerous conditions;
 to paint concrete steps with paint that would not become slippery when wet;
 to provide a safe environment for patrons; and
 to remedy unreasonably dangerous conditions of which defendants had actual or constructive knowledge.
The trial court considered and relied upon the contents of the contract of lease between Feld and Hirsch in sustaining Feld's peremptory exception of no cause of action. La. C.C.P. art. 931 mandates that no evidence may be used to decide the exception of no cause of action. A peremptory exception of no cause of action must be decided on the face of the petition, the allegations of which are presumed to be true. Evidence introduced without objection has been recognized as an exception to the foregoing general rule. In Block v. Bernard, Cassisa, Elliott & Davis, 04-1893 (La.App. 1st Cir.11/4/05), 927 So.2d 339, the court stated that evidence introduced without objection is considered as having enlarged the pleadings. See also, Rebardi v. Crewboats, 04-0641 (La.App. 1st Cir.2/11/05), 906 So.2d 455.[2]

THE LEASE
The lease provided in pertinent part the following:
2. For the engagement of the Ice Show hereunder, Lessor shall, at its sole cost and expense:
. . . .
(l) Provide, employ and control (I) building superintendent, (ii) sufficient janitors, sweepers, cleaners, restroom attendants and other custodial workers for the proper cleaning of the Coliseum, including but not limited to, the cleaning of the entire spectator premises before move-in, during and prior to each performance. . . .
Additionally, the lease stated that lessee would maintain public liability insurance from an approved company authorized to do business in the State of Louisiana, "naming Lessor and also the City of Shreveport and their respective agents and employees as additional insureds for the Engagement against liability for bodily injuries, including injuries resulting in death, and against liability for property damage. . . ." However, claims arising out of the structural or design defects in and of the coliseum or liability resulting from the negligence or negligence per se of the lessor would be excluded.

DISCUSSION
The Birdsongs' petition and amended petition do not refer to the lease contract. *1099 In its memo in support of the exception of no cause of action, Feld attached the February 8, 2000, letter agreement between Feld (Ringling Bros.-Barnum & Bailey Combined Shows, Inc.) and State Fair of Louisiana, which incorporated by reference the attached June 18, 1998, lease between the same parties. The lease period covered Thursday, March 2, 2000, through Sunday, March 5, 2000.
After identifying the issue as to which party had garde of the premises, the trial court at the October 2, 2006, hearing had attorneys "walk me through the contract parts you think are pertinent. . . ." The arguments of both attorneys included references to the contents of the contract. Neither objected to the trial court's consideration of the contract in reaching its decision. As previously noted, the trial court found that Feld owed no duty to inspect or clean the area, because under the lease contract, Hirsch was solely responsible for the maintenance and safety of the premises.
A discussion in Pamplin v. Bossier Parish Community College, 38,533 (La. App.2d Cir.7/14/04), 878 So.2d 889, 893, writ denied, 04-2310 (La.1/14/05), 889 So.2d 266, explained liability based upon the concept of garde, noting that garde exists when one has the right of direction and control over things in one's care.
An individual is responsible for the damage caused by things in his custody. La. C.C. art. 2317. The owner or custodian of a thing is answerable for damage caused by its defect only upon a showing that he knew or, in the exercise of reasonable care, should have known of the defect which caused the damage, that the damage could have been prevented by the use of reasonable care, and that he failed to exercise such care. La. C.C. art. 2317.1. Thus, to recover for damages caused by a defective thing, the plaintiff must prove that the thing was in the defendant's custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect.
In a lease, ownership and possession are generally split, and whether the law imposes the duty of garde on lessor or lessee is a factual question. The lease creates a factual dispute regarding garde and the assessment of fault against the lessor or lessee. Pamplin, supra. Nevertheless, Pamplin observed that a negligence duty to protect guests on leased premises from known defects is uniformly applicable to both lessor and lessee alike.
While the Birdsongs argue that the cases relied upon by Feld are inapplicable, we consider both relevant. In Mix v. Krewe of Petronius, 95-1793 (La.App. 4th Cir.5/22/96), 675 So.2d 792, the City of New Orleans leased the Municipal Auditorium to a Mardi Gras krewe. Mix fell on an inadequately-lighted step painted the same color as the landing. This was found to be an unreasonably dangerous condition by the trial court. While the lessor/City was held negligent for the unreasonably dangerous condition, the krewe leased the building for only 15 hours and 59 minutes, as opposed to months or years. The krewe had no opportunity to inspect, repaint, or reconfigure the lighting system. The krewe had no garde of the steps, landing, or lighting and was not liable for Mix's injury.
In contrast, the lessee was liable in Guillory v. Foster, 93-996 (La.App. 3d Cir.3/2/94), 634 So.2d 1372, when Guillory fell on a board the lessee had installed on the dance floor in preparation for building a rail to separate the dancers from the band. On appeal, Guillory wanted the lessor/building owner found liable under La. *1100 R.S. 9:3221, which makes an owner responsible for defects in the leased premises about which the owner knew or should have known. After the lessee took possession of the leased premises, the lessee affixed the board to the floor in violation of the lease and without the owner's knowledge. The lessee had garde (supervision and control) of the dangerous board. The court rejected Guillory's argument that the board was a structural defect, since the board was an alteration and not a component structural part of the building.
Even if we consider the pleadings enlarged by the consideration of the lease contract requiring Hirsch Coliseum to be responsible for cleaning, the Birdsongs' action should not have been dismissed.[3] The lease may indicate that Hirsch retained garde of the building and the responsibility for cleaning spills caused by the patrons. However, the lease is a contract solely between Hirsch and Feld to which the Birdsongs, the alleged tort victims, were not parties. The Birdsongs were patrons to Feld's production and under that entertainment agreement were Feld's guests on the premises. As in our ruling in Pamplin, supra, the inquiry into Feld's responsibility for this accident does not end upon a finding of retained garde in the lessor, Hirsch, because of Feld's duty of care owed to its patrons which must be further considered under the La. C.C. art. 2315 and our general law of negligence.
The Birdsongs' petition alleged the existence of an unreasonably dangerous condition of which Feld had knowledge. In our de novo review, we accept the allegations as true for purposes of the peremptory exception. Moreover, in Birdsong I, supra, this court noted that the Birdsongs had shown circumstantially that the wet area where the fall could have occurred resulted from condensation on the floor due to the cold condition from the ice rink.
These allegations are enough to support an independent claim for negligence against Feld which must be considered apart from the asserted retention of garde by Hirsch under the lease. Feld's duty was to act to protect its patrons from any unreasonable risk of harm, such as the alleged condensation problem, that was caused by a defective condition in the building known to Feld. The party with garde may be liable for its connection to the defect because of its ownership and possession. Regardless of that garde, Feld may be liable for its knowledge of the defective condition of the premises with its solicitation of patrons to the allegedly defective setting.
In addition to the reliance on the lease contract, the Birdsongs' attorney cited the depositions and affidavits filed into the record supporting and opposing the motion for summary judgment litigated in Birdsong I, supra. Clearly this dispute is inappropriate for resolution via a peremptory exception of no cause of action.
The Birdsongs' alternative to recovery would be to show Feld's responsibility for a spill made by a member of the public. The opinion in Birdsong I, supra, at pp. 1235-1236, discussed that burden:
In Holden v. Louisiana State University Medical Center-Shreveport, 29,268 (La.App.2d Cir.2/28/97), 690 So.2d 958, writ denied, 97-0797 (La.5/1/97), 693 So.2d 730, we reviewed Louisiana's negligence law for slip and falls in public places where a member of the public is the most likely source of a substance spilled on the floor. Though the special merchant statute, La. R.S. 9:2800.6, was *1101 inapplicable for the hospital/defendant in Holden, we concluded that in merchant and non-merchant settings alike, the following applies:
In the absence of proof that the hazardous spill was caused by the defendant's own actions, the duty to keep the premises in a safe condition must be shown to have been breached by some proof of an inadequate inspection procedure. From our review of the slip and fall cases, the burden of producing such evidence is now clearly back on the plaintiff in the storekeeper/merchant context, and it was never removed from the plaintiff's burden in the non-merchant setting such as this case.
Id. at 964.
La. R.S. 9:2800.6(A) defines the merchant's duty as follows:
A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

DECREE
For the foregoing reasons, we reverse the judgment granting Feld Entertainment, Inc.'s exception of no cause of action and dismissal of the Birdsongs' action. This matter is remanded for further proceedings. Costs of this appeal are assessed against Feld Entertainment, Inc.
REVERSED AND REMANDED.
NOTES
[1] In Birdsong I, plaintiffs named as defendant Hirsch Memorial Coliseum, which filed its answer in that name. The other named defendant was Feld Entertainment, Inc. (Ringling Brothers). State Fair of Louisiana (Hirsch) and Ringling Bros.-Barnum & Bailey Combined Shows, Inc. (Feld) are the parties to the February 8, 2000, letter agreement (on Feld Entertainment, Inc. letterhead) and the June 18, 1998, contract incorporated by reference. There is no answer to Feld's cross-claim against State Fair of Louisiana. The nature of that State Fair entity and its relationship with Hirsch is unexplained. This ambiguity hampered neither the parties nor the trial court during the course of the litigation, since apparently all agreed as to the nature and identity of the Hirsch/State Fair defendant and the Feld/Ringling Bros. defendant.
[2] In Borden v. West Carroll Parish Police Jury, 28,967 (La.App.2d Cir.12/11/96), 685 So.2d 454, this court suggested, but did not state, that the evidence could have been considered on the exception of no cause of action had the record contained a transcript or factual narrative demonstrating that the evidence had been introduced without objection.
[3] In Birdsong I, supra, the contract was made part of the record and used by the trial court and this court in deciding the merits of Hirsch's motion for summary judgment.