968 So.2d 893 (2007)
CENTURY READY MIX CORP., Plaintiff
v.
Dennis BOYTE d/b/a Dennis Boyte Construction and Dawson Farms, L.L.C., Defendants.
No. 42,634-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*895 C. Bryan Racer, Monroe, for Appellant, Dawson Farms, L.L.C. and Appellee, Dennis Boyte.
McNew, King, Mills, Burch & Landry, L.L.P., by Brady D. King, II, Monroe, Jennifer H. Johnson, for Third Party Appellee, First National Bank of Crossett.
W. Michael Street, for Appellee, Century Ready Mix Corp.
Before STEWART, GASKINS and CARAWAY, JJ.
CARAWAY, J.
An unpaid cement supplier instituted suit under the Louisiana Private Works Act, La. R.S. 9:4801, et seq., against the owner and building contractor of a cold storage facility built on owner's property. The owner filed a third party demand for damages against a bank which had been assigned the proceeds of the contract of a subcontractor, which had failed to pay the plaintiff. The bank applied the proceeds *896 to indebtedness owed the bank by the subcontractor. The trial court granted the bank's exception of no cause of action relating to claims of indemnification, breach of contract and malfeasance, giving the owner thirty days to amend his petition to state a cause of action. When the owner failed to do so, the bank obtained a judgment of dismissal of the action with full prejudice. This appeal by the owner followed. We affirm.

Facts
Dawson Farms, LLC ("Dawson") contracted with Dennis Boyte Construction ("Boyte") for the construction of a cold storage facility on Dawson's property. Boyte contracted with Steve Wooten Contracting, Inc. ("Wooten") as concrete subcontractor for the project on January 12, 2004. By letter of January 16, 2004, Boyte was advised that Wooten had assigned the proceeds of the cold storage facility contract to First National Bank of Crossett ("FNBC") and that checks for Wooten's work on the project should be made payable to both Wooten and FNBC jointly. Boyte claimed to have tendered checks to both Wooten and FNBC for Wooten's services.
Wooten subcontracted with Century Ready Mix ("Century") for concrete and related materials supplied to the project. Although FNBC negotiated the checks received from Boyte, FNBC used the funds as payment of Wooten's unrelated debt, and Wooten failed to pay Century for the concrete and supplies. Century filed a statement for lien and privilege for labor and materials on May 24, 2004.
On April 25, 2005, Century instituted suit against Boyte and Dawson, seeking $87,111.72 owed for concrete and supplies and for recognition of the lien and privilege under the Private Works Act. Boyte and Dawson filed a reconventional demand for damages against Century. Dawson also filed a third party demand against FNBC seeking damages for acts of malfeasance, breach of contract, breach of fiduciary duty and indemnification. Significantly, in making these claims, there is no allegation by Dawson that it had any contact, negotiations or communications with FNBC regarding the checks FNBC received from Boyte.
In response to the claims of Dawson, FNBC filed an exception of no cause of action. After hearing argument on the exception and taking the matter under advisement, the trial court rendered written judgment sustaining the exception of no cause of action and granting Dawson thirty days to amend its third party demand to state a cause of action. No amendment to Dawson's claim was made, and upon FNBC's motion to dismiss, the trial court dismissed the action with prejudice on January 30, 2007.
Dawson now appeals the January 30, 2007 judgment of dismissal raising three arguments attempting to define a cause of action against FNBC. First, Dawson argues that it is entitled to indemnification from FNBC because FNBC subrogated itself to the rights and liabilities of Wooten by entering into an assignment agreement. Alternatively, Dawson asserts a claim for indemnity based on unjust enrichment. Dawson also argues that it was a third party beneficiary of the subcontract between Boyte and Wooten and that FNBC, as assignee of that contract, breached the contract benefits conferred to Dawson as third party beneficiary. Finally, Dawson urges that it has stated a cause of action for malfeasance based upon FNBC's failure to pay Wooten's supplier with sums allocated specifically for the cold storage project.

Discussion

I.
Before reaching Dawson's arguments, the appellee FNBC seeks dismissal *897 of the appeal. It claims that the language employed in the final judgment of dismissal indicates Dawson's confession of judgment.
An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment. La. C.C.P. art.2085.
The final dismissal of this action on January 30, 2007, resulted from a two-part procedural process which began with the October 19, 2006 judgment sustaining FNBC's exception of no cause of action. In pertinent part that judgment reads as follows:
It is further hereby Ordered, Adjudged, and Decreed that the plaintiff has failed to plead a Cause of Action as to any remaining claims. The Court will grant the Third Party plaintiff thirty (30) days from the signing of this Judgment to amend to state a Cause of Action. Failure to do so will result in the dismissal of all remaining claims with full prejudice and at Third Party plaintiff's sole costs.
When no action to amend the pleadings by Dawson occurred, FNBC filed a motion to dismiss the action in accordance with Louisiana jurisprudence which has required the obtaining of a subsequent final judgment of dismissal when the earlier judgment sustaining the exception gave an allowance to plaintiff to amend under La. C.C.P. art. 934. See, Interstate Electric Co. v. Interstate Electric Co. of Shreveport, 6 So.2d 39 (La.App. 2d Cir.1942). See also, Wright v. Ruston Daily Leader, 612 So.2d 980 (La.App. 2d Cir.1993); Minnieweather v. Brumley, 602 So.2d 1062 (La.App. 2d Cir.1992); Spencer v. Burglass, 288 So.2d 68 (La.App. 4th Cir.1974).
The court signed a final judgment of dismissal on January 30, 2007, which stated:
This Court, having previously ruled on the FIRST NATIONAL BANK OF CROSSETT's Exception of No Cause of Action, having received FIRST NATIONAL BANK OF CROSSETT's Motion to Dismiss based upon DAWSON FARM's failure to timely amend as ordered, and now having been informed herein that DAWSON FARMS has no opposition to the Motion to Dismiss, it is hereby ordered, adjudged and decreed that the third-party demands of DAWSON FARMS, in their entirety and against all parties, is hereby dismissed with full prejudice and at DAWSON FARM'S sole cost.
FNBC urges that Dawson's lack of objection to the judgment of dismissal operates as a confession of judgment which precludes this appeal. On the contrary, Dawson was not required to amend its demand and its acquiescence in the judgment was nothing more than an agreement that, in the procedural posture of the case, dismissal was warranted. Dawson's actions did not represent acquiescence in the court's ruling on the merits of the exception of no cause of action. Thus, this argument is without merit.

II.
A "cause of action," when used in the context of the peremptory exception of no cause of action, is the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993). A peremptory exception of no cause of action questions whether the law *898 extends a remedy to anyone under the factual allegations of the petition. Birdsong v. Hirsch Memorial Coliseum, 42,316 (La.App.2d Cir.8/22/07), 963 So.2d 1095; Hayes v. Gallagher Bassett Services, Inc., 41,579 (La.App.2d Cir.12/13/06), 945 So.2d 911, writ denied, 07-0085 (La.3/30/07), 953 So.2d. 73. The exception is triable on the face of the petition, each well-pled fact of which must be accepted as true. There is no requirement that the court accept as true any conclusions of law alleged in the petition. No evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931; Wright v. Louisiana Power and Light, 06-1181 (La.3/9/07), 951 So.2d 1058; Birdsong, supra. The burden of demonstrating that the petition states a cause of action is upon the mover. Wright, supra. Appellate courts conduct a de novo review of a district court's ruling sustaining an exception of no cause of action, because the exception raises a question of law and the district court's decision should be based only on the sufficiency of the petition. The pertinent question is whether, in the light most favorable to the plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief. Wright, supra. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Badeaux v. Southwest Computer Bureau, Inc., 05-0612 (La.3/17/06), 929 So.2d 1211.
When an owner contracts for the improvement of an immovable with a contractor, the Louisiana Private Works Act grants laborers or employees of the contractor or subcontractor and "sellers"/suppliers of the improvement claims against the owner and the contractor to secure payment of the price of work performed and supplies for the improvement. La. R.S. 9:4802. The claims against the owner shall be secured by a privilege on the immovable upon which the work is performed. La. R.S. 9:4802(B). Those persons granted a claim and privilege by Section 4802 for work arising out of a general contract, notice of which has been filed, shall file a statement of their claims and privileges within 60 days after substantial completion or abandonment of the work. La. R.S. 9:4822; First Thrift and Loan, L.L.C. v. Griffin, 41,666 (La.App.2d Cir.3/14/07), 954 So.2d 269.
The Private Works Act creates a right against an owner in favor of a seller/supplier, even though the seller/supplier does not have a contractual relationship with the owner, by virtue of the worker filing a lien. However, until the seller/supplier or laborer files a claim under the Act, he never achieves the status of creditor. First Thrift and Loan, L.L.C. v. Griffin, supra.
One argument for an indemnification claim which Dawson attempts to construct is based upon an indemnity provision in the Private Works Act owed by a subcontractor to an owner of the construction site, La. R.S. 9:4802(F),[1] and Dawson's assertion that FNBC "stepped into the shoes" of the subcontractor, Wooten. Regardless of the operation of that right of indemnity under the Private Works Act, we find that nothing has been alleged by *899 Dawson that makes FNBC a subcontractor of this construction project.
Dawson argues that an "assignment between [Wooten] and the bank" occurred. While the object of assignment is somewhat obscure in Dawson's brief, the only allegations in its third party demand were that by letter, Boyte was advised that Wooten "had assigned the proceeds" of Wooten's subcontract for the job to FNBC and that as a result, "Boyte was requested to make checks payable to" Wooten and FNBC. These allegations do not assert that FNBC was assigned the obligations of Wooten to perform its contract with Boyte. FNBC assumed no obligation of that contract which was Wooten's subcontractor's agreement with the contractor. Boyte was only "requested" to make payment and had no alleged obligation to pay FNBC.[2] Despite this mere "proceeds" request, Dawson argues that this caused FNBC to step into Wooten's shoes and that FNBC "substituted itself to the rights and liability of the subcontractor." We disagree. Wooten had a contract with Boyte. It had another with Century. There is no allegation that FNBC was assigned or assumed the obligations of any contract with either Boyte or Century for Wooten's performance in this construction project.[3]
Dawson next argues for indemnity on "equitable principles." We interpret this argument as a claim for unjust enrichment or enrichment without cause. This alternative argument concedes that there was no contract between Dawson and FNBC. Therefore, the Civil Code's Title V of Book III, Obligations Arising Without Agreement, must be considered. In that title, Civil Code Article 2298 provides, in pertinent part, as follows:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
In this case, FNBC was a creditor of Wooten. Because of its cement supply contract, Century was also a creditor or obligee of Wooten. Both were ordinary creditors without any lawful cause for preference over Wooten's asset which, in this case, was in the form of cash payment, the check from Boyte. The check was negotiated and the monetary asset of Wooten was applied to a just and due debt of FNBC. If Dawson's argument is that FNBC was enriched by its receipt of payment on its debt, its enrichment might be viewed as having occurred at the expense of Century and not Dawson.[4] Moreover, any enrichment of FNBC was not without cause in that FNBC received payment as the result of a valid juridical act, which was its loan to Wooten. Accordingly, we find no basis for indemnification to Dawson under La. C.C. art. 2298.
*900 Dawson's last argument is for a cause of action which Dawson labels as malfeasance. The early jurisprudence which Dawson cites reveals this as a tort claim with Civil Code Article 2315 at its root.[5] Such malfeasance has generally been defined as "the doing of an act which is wholly wrongful or unlawful and which a person ought not to do at all." Ellett v. Newland, 171 La. 1019, 132 So. 761 (1931). In another early case, malfeasance was said to be the unjust performance of some act which the party had no right, or which he had contracted not, to do. State ex rel. Jones v. Doucet, 203 La. 743, 14 So.2d 622 (1943).
We have found no jurisprudence addressing a "malfeasance" tort since the formulation of our modern tort theory under the duty-risk analysis. A threshold issue in any negligence action under the duty-risk analysis is whether the defendant owed the plaintiff a duty. Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762. Whether a duty is owed is a question of law. Peterson v. Gibraltar Sav. & Loan, 98-1601, 98-1609, (La.5/18/99), 733 So.2d 1198, 1204; Mundy v. Dep't of Health & Human Resources, 620 So.2d 811, 813 (La.1993); Faucheaux v. Terrebonne Consol. Gov't, 615 So.2d 289, 292 (La.1993). The "malfeasance" charge now made by Dawson addresses itself to the question of whether FNBC owed a duty to Dawson.
In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. Posecai, supra. The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving. Id.
From our discussion above regarding the status of FNBC and Century as ordinary creditors of Wooten, we have determined that FNBC's receipt of payment from its debtor did nothing to unjustly enrich itself to the harm of Century or Dawson. We are cited no provision in the Private Works Act by Dawson that regulates FNBC's conduct and imposes any legal duty that could be breached. Boyte had liability risks under the Private Works Act attendant to its duties as general contractor concerning the unpaid laborers and suppliers of its subcontractor. Yet, Boyte voluntarily paid Wooten through the requested arrangement with FNBC. The duties for the protection of Dawson regarding potential Private Works Act claims lay with other parties directly involved in the construction project and with Dawson itself, but not FNBC. Accordingly, we find no duty on FNBC to support a tort claim under these circumstances.

Conclusion
From our review of appellant's arguments, we find no allegations of a cause of action against FNBC. The trial court's dismissal of appellant's claims against FNBC on the exception of no cause of action is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] La. R.S. 9:4802(F) provides as follows: A contractor shall indemnify the owner for claims against the owner arising from the work to be performed under the contract. A subcontractor shall indemnify the owner, the contractor, and any subcontractor from or through whom his rights are derived, for amounts paid by them for claims under this part arising from work performed by the subcontractor.
[2] FNBC makes no assertion of a security interest in the proceeds of the contract or "payment intangible" under Louisiana's Uniform Commercial Code law and the notice to Boyte for the requested joint payment does not appear to be a notice pursuant to La. R.S. 10:9-406(a).
[3] Since we find no allegation of the assignment of the obligations of the Boyte/Wooten subcontract, Dawson's argument that FNBC violated the benefits conferred to Dawson as third party beneficiary under the subcontract is likewise without merit.
[4] Even with rights afforded by the revocatory action under La. C.C. art.2036, the competing creditor may not annul an obligor's payment of a just and due debt to another creditor. La. C.C. art.2036, Revision Comments (h).
[5] La. C.C. art. 2315 provides, in pertinent part:

A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.