BROWN, Chief Judge.
| plaintiffs, Otis Robinson, Jr., and the Succession of Willie Mae Terrell Jeter, filed this action to annul the private sale of succession property executed between defendants, Inez Nunly, as administratrix of the Succession of Joanna Bias, and Isaac Dwayne Morris and Annette Hausey Morris, the purchasers of the property, a 250-acre tract in Bienville Parish, Louisiana. The trial court granted a peremptory exception of no cause of action filed by Nunly and dismissed plaintiffs’ lawsuit. Plaintiffs appealed. Defendants answered the appeal asserting that, should the judgment of the trial court be reversed, then the trial court’s denial of their exceptions of lis pendens, res judicata, and prescription should also be reversed. In addition, the Morrises filed in this court an exception of no cause of action. We reverse in part the granting of Nunly’s exception of no cause of action, deny in part Morrises’ exception of no cause of action, affirm the denial of defendants’ exceptions of lis pendens, res judicata and prescription, and remand for further proceedings to include the amending of the petition.

Discussion

The Parties

Joanna Bias died intestate on March 12, 1946. She was survived by five children from her (first) marriage to Adolphus Terrell. One child, Monroe Terrell, died without issue. The other four children, Earnest Terrell, A.B. Terrell, Willie Mae Terrell Jeter and Cora Terrell Munson, all Lof whom are deceased, left descendants.[1] *634 Joanna Bias’s second husband was Lacy Bias- No children were born of this marriage.[2]
Plaintiffs are Otis Robinson, Jr. (“Robinson”), and the Succession of Willie Mae Terrell Jeter. Robinson is a resident of California and the sole heir of Cora Terrell Munson’s one-fourth share of the estate. The Succession of Willie Mae Terrell Jet-er, through its co-executrixes, Reassie McDowell and Regina McDowell (“The McDowells”), who live in Illinois and Nevada respectively, also has a one-fourth interest in the estate.[3]
Defendants are the Succession of Joanna Bias through Inez Nunly, its administra-trix, and Isaac Dwayne Morris and Annette Hausey Morris (“the Morrises”), the purchasers of the 250 acres at the private sale.

Proceedings

.On April 28, 2003, over 57 years after Joanna Bias’s death, Nunly opened Mrs. Bias’s succession by filing a petition to appoint herself administratrix. In the petition, Nunly alleged that the succession’s only expenses were attorney fees and court costs pertaining to the succession. With Isaac Morris signing as surety, Nunly posted a bond of $156,250. ^Thereafter, Nunly filed a petition for the private sale of the succession’s only asset, the 250 acre tract. No purchaser was named in this petition but the price was stated to be $125,000 or $500 per acre. Notice of the sale was published in the Bienville Democrat, a local weekly newspaper out of Arcadia, Louisiana. The pleadings allege that nó notice was sent to plaintiffs, nor was an attorney appointed to represent any absentee heirs. Regardless, the district court approved the sale and, on June 18, 2003, Nunly conveyed the 250-acre tract to the Morrises for $500 per acre. In late July, Nunly obtained a court order 'to amend the legal description of the property. This amendment was not published in the local newspaper. In August 2003, the Morrises directed the Bienville Tax Assessor to send them the property tax notices. On May 21, 2004, Nunly filed a petition to approve the final accounting of the succession. At this time, 12 other heirs signed a waiver of notice and consent to the final accounting. At this point in the proceedings, an attorney was appointed to represent Robinson and “all unknown heirs.”
On the tax rolls of Bienville Parish prior to the private sale, the subject property was assessed as follows: (1) an undivided one-fourth interest to Jo Ann Munson, and later to Otis Robinson, Sr.; (2) an undivided one-fourth interest to Willie Mae Jeter c/o Reassie McDowell; and, (3) an undivided one-half interest to the estate of Joanna Bias c/o Inez Nunly. Each year, the tax notices were sent to these parties, and each paid their share of the taxes as listed on the tax roll. Thus, when Robinson did *635 not receive a tax notice in December 2003, he contacted the assessor and learned of the sale to the Morrises.
14Plaintiffs filed an opposition to the final accounting on September 10, 2004. On November 29, 2004, while the succession matter was still pending, plaintiffs filed the instant suit to annul the cash sale from Nunly to the Morrises and to recognize Robinson and the heirs of Willie Mae Terrell Jeter each as owners of an undivided one-fourth interest in the property.[4]
In response defendants filed several exceptions, including vagueness (later withdrawn), lis pendens, res judicata, and prescription. A hearing on the exceptions, held in September 2006, focused on what (if any) notice plaintiffs received. Robinson and Nuniys attorney, James Mixon, testified, and the trial court took the matter under advisement.
Thereafter, in March 2010, Nunly filed an exception of no cause of action. In essence, she argued that plaintiffs’ remedy was to be asserted in the succession proceedings. She also contended that under La. C.C.P. art. 2004(B) (fraud and ill practices), any action in nullity prescribes after one year. The Morrises filed a separate memorandum in support of their exceptions.
Plaintiffs responded by filing over 300 pages of documents, including the depositions of Nunly, Reassie McDowell and a timber agent, Floyd Smith, as well as a sheaf of letters, leases and other documents.
The hearing on the exceptions in April 2010 was limited to argument. The trial court orally denied the exceptions of lis pendens and res judicata because “it may not be the same parties in the same eapacity” in the two suits, and it overruled the exception of prescription since Robinson did not | shave actual knowledge of the judicial sale until after he failed to receive a tax notice in December 2003. However, the trial court granted Nunly’s exception of no cause of action, finding that Robinson obstructed any attempts at actual notice by refusing to give Attorney Mixon any addresses.
The instant appeal was taken by plaintiffs. Defendants answered the appeal asking that the denial of their exceptions of lis pendens, res judicata, and prescription be reversed. Morris also filed an exception of no cause of action in this court.

No Cause of Action

Plaintiffs contend that: (1) they are absentees and had no notice of the private sale and no curator or attorney was appointed to represent them until after the sale was concluded; (2) an administration and sale of the succession’s only asset was unnecessary and constituted deprivation of property without due process; and, (3) any effort to sell the property should have been done contradictorily by a petition to partition by licitation.
The purpose of the exception of no cause of action is not to determine whether the plaintiff will prevail at trial, but is to ascertain if a cause of action exists. “We The People” Paralegal Services, L.L.C. v. Watley, 33,480 (La.App.2d Cir.08/25/00), 766 So.2d 744. The peremptory exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Gipson v. Fortune, 45,021 (La.App.2d Cir.01/27/10), 30 So.3d 1076, writ denied, *636 10-0432 (La.04/30/10), 34 So.3d 298. As an exception to the rule that no evidence may be admitted to support or controvert an exception of no cause of action, a court is allowed to consider evidence which is admitted without | (¡objection to enlarge the pleadings. Sullivan v. Sullivan, 42,923 (La.App.2d Cir.02/13/08), 976 So.2d 329, writ denied, 08-0816 (La.06/06/08), 983 So.2d 921.
The burden of demonstrating that the petition states no cause of action is upon the mover. Scheffler v. Adams and Reese, LLP, 06-1774 (La.02/22/07), 950 So.2d 641; Wright v. Louisiana Power & Light, 06-1181 (La.03/09/07), 951 So.2d 1058. A reviewing court considers de novo a trial court’s ruling on an exception of no cause of action. Gipson, supra. The essential question is whether, in the light most favorable to plaintiffs and with every doubt resolved in plaintiffs’ favor, the petition states any valid cause of action for relief. Wright, supra. When the grounds upon which an exception of no cause of action is based may be removed by amendment of the petition, the judgment sustaining the exception must order an amendment within a specified delay. “We The People” Paralegal Services, L.L.C., supra.
Nunly filed her exception of no cause of action after the district court had held a hearing and received testimony on the previously filed exceptions. In addition, plaintiffs filed over 300 pages of documents in response to Nunly’s exception of no cause of action and no one objected to this evidence. This may be considered as an enlargement of the pleadings, and an exception of no cause of action is decided on the “four corners” of petitioners’ pleadings/enlarged pleadings. Century Ready Mix Corp. v. Boyte, 42,634 (La.App.2d Cir.10/24/07), 968 So.2d 893.
Regardless, the trial court granted the exception of no cause of action because Robinson “wouldn’t give anybody an address to get any notice of |7what was going on.”[5] Even so, this court has before it a no cause of action exception and must decide de novo from the four corners of plaintiffs’ pleadings/expanded pleadings whether a cause of action was stated.
Despite the fact that Nunly and her agents spoke to and were informed by plaintiffs that they did not want to sell the property, Nunly opened the succession and, using La. C.C.P. art. 3261, conducted a private sale of the succession property without informing plaintiffs. Article 3261 allows a succession representative to sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court. Here, however, there were no debts or charges to be paid. The succession was opened 57 years after Mrs. Bias’s death. All of the property’s taxes had been paid, leases had been granted and, on occasion, timber cut and sold. See Succession of Shepherd, 454 So.2d 1265 (La.App. 2d Cir.1984).
The general rules for judicial partition of succession property are provided in La. C.C. art. 1290, et seq. As was readily apparent and pled, there were neither debts nor the need for an administration. La. C.C.P. art. 3006 provides:
*637 If a competent heir of an intestate resides out of the state and cannot be located, or his whereabouts are unknown, the other competent heirs may be sent into possession of the property without an administration of the succession, as provided herein and in Articles 3004 and 3005.
|RUpon the filing of the petition for possession, the court shall appoint an attorney at law to represent the absent heir, and shall order him to show cause why the heirs of the intestate should not be recognized, and sent into possession of the property of the intestate without an administration of the succession.
After a hearing on the rule against the attorney for the absentee, if the court concludes that the succession is thoroughly solvent and that there is no necessity for an administration, it may send all the heirs of the intestate, including the absentee, into possession.
In addition, La. C.C.P. art. 3171 is relevant, and it provides:
If it appears from the record, or is otherwise proved by an interested party, that an heir of an intestate, or a legatee or presumptive legal heir of a deceased testator, is an absentee, and there is a necessity for such appointment, the court shall appoint an attorney at law to represent the absent heir or legatee. (Emphasis added).
In the case sub judice, it was pled by plaintiffs that together they had a one-half interest in the estate. Plaintiffs, who were nonresidents and had no agent in this state for service of process, are undoubtedly absentees as defined by La. C.C.P. art. 5251(1).[6] In a case like this, where the entirety of the succession property in Louisiana was being sold at a private sale, and the absentee heirs own a significant interest in the property, clearly there existed “a necessity for the appointment” of an attorney. “The necessity is inherent in the circumstances presented by this case. Under the doctrine of Le mort saisit le vif, valuable property rights already vested in the residuary legatees Uwere involved.” Middle Tennessee Council, Inc., Boy Scouts of America v. Ford 274 So.2d 173, 176 (La.1973). “These residuary legatees who were to be the sole beneficiaries of the sale proceeds required notice of, and an opportunity to oppose, such a sale, if, in their judgment, the facts and the law warranted such action.” Id.
In Middle Tennessee Council, Inc., Boy Scouts of America, Inc., supra, the supreme court noted that price was also a factor. A finding that the price was woefully inadequate would result in a vice of substance, rendering the sale an absolute nullity against which a prescription of article 3543 cannot run.[7] Id. “To put it another way, plaintiffs contend that the gross inadequacy of the price created a ‘defect of *638 substance’, which either solely or together with the bad faith actions of the executor make the sale an absolute nullity.” Id. at 177.
In the present case, the pleadings implicitly questioned the price and the trial court was clearly concerned about the price and the inequity of plaintiffs not receiving notice. In its oral reasons, the trial court stated:
... because of the extenuating circumstances and the fact that the property is worth now inore than we knew back then and the court always feels bad for someone’s property being sold without them having notice ...
Defendants cite Succession of Lewis, 440 So.2d 899 (La.App. 2d Cir.1983), writ denied, 443 So.2d 1119 (La.1984), to support their argument that, under La. C.C.P. 3261, the appointment of an attorney for the absentees was not necessary. We note that Succession of Lewis, supra, was not a no | incause of action case but involved a full trial. In Succession of Lewis, the trial court and this court found that, under the particular circumstances of that case, the failure to appoint an attorney for the absentee heirs did not render the sale of succession property null. Notably this court in Succession of Lewis, 440 So.2d at 905, wrote:
A different result would attach if it was found that the sale price obtained for the property had been unfair or inadequate because this would remove the case from the ambit of La. C.C.P. Art. 2004 and place it in the category of absolute nullity. If property has been sold for a woefully inadequate consideration, then the sale would be absolutely null.
The history between the families of Inez Nunly and plaintiffs involving this property raises the question of ill practices and further demonstrates the necessity for the appointment of an attorney for the absent heirs in connection with the sale. In 1980, Willie Mae Terrell Jeter and Jo Ann Mun-son (Robinson’s grandmother) filed an action in the Bienville Parish District Court against Lillie Terrell Brooks. Mrs. Brooks lived in Shreveport, Louisiana, and was one of five children of Earnest Terrell. Brooks was Nunly’s sister. The petition stated that Brooks cut and sold the timber on the property without notice and refused to disclose any information or to pay other heirs their share. On August 10, 1984, judgment was rendered in favor of plaintiffs. In that judgment, the court found that Joanna Bias had five children, that one child died without issue and Willie Mae Terrell Jeter and Jo Ann Munson were recognized as owning an undivided one-fourth. Also included in the exhibits filed into the record without objection was another deed dated 1986 showing where Lillie T. Brooks again unilaterally sold timber from the property for $4,750.
|nIn 1993, Nunly and Jerry Tim Brooks, Lillie Brooks’ son, sold the timber to John Mark Milam for $8,220.[8] Jo Ann Munson was added to and also signed the timber deed. Milam immediately sold the timber to Red Oak Timber Co. for $8,220.[9] The *639 deed allowed until the end of 1994 to cut the timber. We note that among the documents filed in this record was a letter from Southern Resources of Hot Springs, Inc., to Willie Mae Jeter dated May 9, 1994, which states an opinion that the property had “approximately $100,000.00 worth of timber ready for a select harvest at the present time.”
In 2002, Floyd Smith, a timber buyer, contacted Nunly. His deposition was filed in the record. Smith asked if he could look at the property and she agreed. Smith found that the land had been cut over but was growing back. He checked the Bienville Parish records and found the 1998 timber deed. Smith told Nunly what he found and she authorized him to find a buyer for the land. Smith checked the records and called her back, and she gave him several names, addresses, and phone numbers of heirs, including plaintiffs. Smith and Nunly actually called Robinson and Reassie McDowell. Smith talked to Jerry Tim Brooks about Brooks buying the 112property. They came up with a $500 per acre price but Brooks decided that he did not want to purchase it. Smith sent Nunly to his attorney, James Mixon. Smith also sent Isaac Morris to see Mixon. At this point Nunly agreed to sell the property to Morris for $125,000. Also at this time all defendants and Floyd Smith knew that Otis Robinson, Jr., did not want to sell the property and that Reassie McDowell had told Nunly that her mother told her to never sell the land.
La. C.C.P. art. 2004 provides that a judgment obtained by fraud or ill practices may be annulled. The criteria set forth for annulling a judgment under this article are explained in Johnson v. Jones-Joumet, 320 So.2d 533, 537 (La.1975):
[H]owever; the jurisprudence set forth two criteria, to determine whether a judgment had, in fact, been obtained by actionable fraud or ill practices: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) the enforcement of the judgment would have been unconscionable and inequitable.
Nunly and Mixon knew that: Robinson (the Munson interest) and Reassie McDowell (the Jeter interest) did not want to sell their interests in the subject property; Robinson lived in California and Reassie McDowell lived in Illinois; their contact information was in the public records; both Robinson and McDowell had been contacted before the sale by Nunly and Smith; and the only notice afforded of the private sale of all of the Louisiana real property was two advertisements in the Bienville Democrat. No effort was made to contact either Reassie McDowell or Robinson or to appoint an attorney to represent their interests until August 13, 2004. By that time, the sale was concluded, and the sole purpose for the appointment of an attorney |iSwas to represent Robinson and all unknown heirs in connection with the filing of a final accounting. We note that this final accounting was filed well over a year after the private sale was approved.
Nunly never notified the trial court of the above facts either prior to the petition for private sale being filed or at any time thereafter. Had the court been aware that the assessor’s records of Bienville Parish revealed that: Jo Ann Munson and Willie Mae Terrell Jeter were shown as owners of an undivided one-fourth interest each in the subject property; addresses were apparent from these records; and the parties did not want to sell their interests, at the very least an attorney would have been appointed to give these owners notice of the proposed private sale.
*640 In the landmark case of Mennonite Board of Missions v. Adams, 462 U.S. 791, 795-96, 103 S.Ct. 2706, 2709-10, 77 L.Ed.2d 180 (1983), the United States Supreme Court wrote:
In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 657 [94 L.Ed. 865] (1950), this Court recognized that prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide “notice reasonably calculated, under all circumstances, to apprise interested parties of the pen-dency of the action and afford them an opportunity to present their objections.” Invoking this “elementary and fundamental requirement of due process,” ibid, the Court held that published notice of an action to settle the accounts of a common trust fund was not sufficient to inform beneficiaries of the trust whose names and addresses were known. The Court explained that notice by publication was not reasonably calculated to provide actual notice of the pending proceeding and was therefore inadequate to inform those who could be notified by more effective means such as personal service or mailed notice:
“Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if |uhe makes his home outside the area of the newspaper’s normal circulation ■ the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.” Id., at 315, 70 S.Ct., at 658.
In the instant case, defendants argue that pursuant to La. C.C.P. art. 3261, the appropriate procedures for an administration and private sale were followed in the succession proceedings. However, there was no need for an administration. The estate had no debts or charges and as provided in La. C.C. art. 1416 each universal successors would be liable to creditors only to the extent of the value of the property received by him, valued at the time of receipt.
Plaintiffs’ pleadings set forth: the substantial ownership interests of plaintiffs in the property; the questionable price paid for the succession property; a series of ill practices previously perpetrated, including timber piracy; and the plaintiffs’ interest in owning this land, which was known to defendants, as well as their failure to disclose those facts to the trial court. From these pleadings, we find that a necessity existed for the appointment of an attorney for the absentee heirs. Thus, the pleadings clearly stated a cause of action. However, there is a flaw in the pleadings which requires an amendment.
This cause of action against the purchasers (Morrises) should involve the return of the money held by the succession of Joanna Bias, as shown by the final accounting. Otherwise the plaintiffs must tender back the sale | ^proceeds in order to rescind the sale. Lee v. Taylor, 21 La. Ann. 514, (La.1869); Jones v. DeLoach, 317 So.2d 240 (La.App. 2d Cir.1975); Nugent v. Stanley, 336 So.2d 1058 (La.App. 3d Cir. 1976); La. C.C.P. art. 934 provides:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the ex *641 ception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

Prescription

The trial court made the following finding as to prescription: “I guess what stuck out in my mind more than anything else was that Mr. Robinson did not know of any type of sale until the — he called about his taxes in December (2003) because he wasn’t getting notice of his taxes and that’s when he got notice of the sale so I’m going to deny the exception of prescription.” This finding is clearly supported by the record and is not manifestly erroneous.
Plaintiffs’ lawsuit to annul the sale was filed in November 2004 or within one year of their discovery of the sale of the property. If the prescriptive period was one year under La. C.C.P. art. 2004(B), then the suit was still timely. However, in Middle Tennessee Council, Inc., supra at 176, the supreme court wrote:
Although the designation of an attorney for absent heirs is not an arbitrary requirement of law, but one that is dependent upon the circumstances of each case, the appointment becomes essential in a case where the necessity is shown during a pending administration of a succession. (Citation omitted).
[1fiNotwithstanding the failure to appoint an attorney for the absent legatees, it has often been held that the appointment of an attorney is merely directory, and the failure to appoint one is, at most, only a relative nullity. (Citations omitted). As a relative nullity, the informality resulting from the failure to appoint an attorney for the absent legatees is prescribed against after the lapse of two years by the prescription of Article 3543 of the Civil Code (currently designated as La. R.S. 9:5622).
La. R.S. 9:5622 provides:
All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State, to sell at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale ...
Further, La. R.S. 9:5632 also provides: A. When the legal procedure is defective or does not comply with the requisites of law in the alienation, encumbrance, or lease of movable or immovable property made by a legal representative of a succession, minor, or interdict, provided an order of court has been entered authorizing such alienation, encumbrance, or lease, any action shall be prescribed against by those claiming such defect or lack of compliance after the lapse of two years from the time of making such alienation, encumbrance, or lease.
In our case the property was sold at the private sale on June 18, 2003. This action was filed in November 2004 and within the two year period.[10]

*642
Lis Pendens and Res Judicata

The trial court properly found that “it may not be the same parties in the same capacity so I’m going to deny the res judicata and lis pendens.” 117Plaintiffs were not named as parties in the succession suit when the property was sold. Over a year after the time for filing an opposition passed and the property sold did Nunly have an attorney appointed to notify plaintiffs of the filing of a final accounting to distribute the proceeds from the sale. Furthermore, the Morrises are an indispensable party in the annulment action and they were not parties to the succession.
La. C.C.P. art. 531 provides:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
As to res judicata, the action in this case is to annul a private sale of succession property. There has been no prior adjudication of this issue.

Conclusion

The trial court’s grant of the exception of no cause of action is in part reversed and denied; the exception of no cause of action filed in this court is in part denied; the case is remanded for an amendment in accordance with this opinion; the trial court’s denial of the exceptions of lis pendens, res judicata and prescription are affirmed. All costs here and below are assessed to defendants, Inez Nunly as administratrix of the Succession of Joanna Bias, and Isaac and Annette Morris.
CARAWAY, J., concurs with written reasons.
MOORE, J., dissents and will assign written reasons.

. Defendants claim that there was a sixth child, Annie D. Terrell. This claim is unresolved. Plaintiffs submitted an August 10, 1984, judgment that specifically found that *634 Joanna Bias had five children. In that case, Jo Ann Munson and Willie Mae Jeter sued Lillie Terrell Brooks for proceeds from a unilateral sale of timber from the property. Brooks, who lived in Shreveport, and Inez Nunly were sisters and the children of Earnest Terrell, one of Joanna Bias’s sons.

. Lacy Bias and Alfred Causey had purchased a tract of land in Bienville Parish in 1902. After Lacy’s death, the tract was divided in kind and Joanna received ownership of the property at issue in the instant case in 1919.

. Willie Mae Jeter had one child, Louella McDowell, who predeceased her mother. Louella had sixteen children, nine of whom are deceased. Initially, two of Louella’s children, Reassie McDowell and Leona McDowell Donnell, and "the other unnamed heirs of Willie Mae Jeter,” were named as plaintiffs. Following an exception of vagueness, the Succession of Willie Mae Terrell Jeter was opened and substituted as plaintiff. Leona McDowell Donnell died in 2007.

. We note that a will was filed for probate in the Willie Mae Jeter succession; this will named Otis Robinson, Sr. as a legatee.

. This was simply a credibility call. On this point, Robinson and James Mixon testified contrarily to each other. Nonetheless, it makes no difference what Robinson told Mix-on because everyone knew Robinson's address and phone number. Nunly telephoned and talked to Robinson, she gave his information to Floyd Smith, her timber agent, who telephoned and talked to Robinson, and Mix-on wrote and spoke with Robinson. All three were told by him that he did not want to sell the property. Further, Reassie McDowell furnished information concerning the heirs to defendants, and she even told Nunly and Smith that her mother said to never sell the land.

. Article 5251(1) of the Code of Civil Procedure defines an absentee as:
(1) "Absentee” means a person who is either a nonresident of this state, or a person who is domiciled in but has departed from this state, and who has not appointed an agent for the service of process in this state in the manner directed by law; or a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state; or a person who may be dead, though the fact of his death is not known, and if dead his heirs are unknown.

. La. C.C. art. 3543, which was redesignated as La. R.S. 9:5622 by Acts 1983, No. 173, § 2, effective January 1, 1984, provided for prescriptive periods for actions asserting infor-malities of procedure connected with any sale at public auction or at private sale of real or personal property of two years and five years. See also La. R.S. 9:5632.

. Lillie T. Brooks had died by that time.

. La. R.S. 3:4278.2 provides that a co-owner of land may sell his or her undivided interest in the timber; however, the buyer cannot remove the timber without the consent of at least 80% of the ownership interest in the land. La. R.S. 3:4278.2(A), (B). Failure to comply with the provisions of the statute constitutes prima facie evidence of intent to commit theft by the buyer. La. R.S. 3:4278.2(E). Accordingly, reference to "the owner or legal possessor” in La. R.S. 3:4278.1 must be construed to mean "at least 80% of the ownership interest in the land.” McConnico v. Red Oak Timber Company, 36,985 (La.App.2d Cir.05/16/03), 847 So.2d 191.

. Another possible prescriptive period was stated in Succession of Lewis, supra at 905: "A different result would attach if it was found that the sale price obtained for the property had been unfair or inadequate because this would remove the case from the ambit of La. C.C.P. Art. 2004 and place it in the category of absolute nullity. If property *642 has been sold for a woefully inadequate consideration, then the sale would be absolutely null (which does not prescribe).”