STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 CA 0575

--and--

2023 CW 0312

SUCCESSIONS OF DAISY LEE MORRIS,
WIFE OF/AND LEVI MORRIS

JUDGMENT RENDERED: **NOV 2 8 2023**

* * * * * * *

Appealed from the Twenty-Second Judicial District Court
Parish of St. Tammany • State of Louisiana
Docket Number 2005-30245 • Division D

The Honorable John A. Keller, Presiding Judge

* * * * * * *

| | |
|---|---|
| Shannon K. Lowry<br>Vincent F. Wynne, Jr.<br>R. Gary Higgins, Jr.<br>Covington, Louisiana | COUNSEL FOR APPELLANTS/RELATORS<br>INTERVENORS—Levi Timothy Morris,<br>Daisy Morris Carter, Learinza Morris,<br>and Virginia Morris Briggs |
| Raymond B. Landry<br>John F. Lee<br>Metairie, Louisiana | COUNSEL FOR APPELLEE/RESPONDENT<br>EXECUTOR—Evangelo Morris |

* * * * * * *

**BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.**

**WELCH, J.**

Levi Timothy Morris ("Levi"), Daisy Morris Carter ("Daisy"), Learinza Morris ("Learinza"), and Virginia Morris Briggs ("Virginia") (collectively "the opposing heirs") appeal a judgment denying their motion to remove the administrator of their parents' successions and denying their petition seeking rescission of the sale of immovable property of belonging to the estate of their parents. The opposing heirs also filed a supervisory writ application seeking review of the trial court's ruling with regard to the denial of their motion to remove the administrator, which was referred to this panel for resolution. For reasons that follow, we dismiss the appeal and deny the supervisory writ application.

## BACKGROUND

Levi Morris died intestate on December 6, 1988, and his wife, Daisy Lee Morris, died intestate on May 30, 1990 (collectively "decedents"). Of their marriage, fifteen children were born: 1) Mary Perry ("Mary"); 2) Sammie Morris ("Sammie"); 3) Leander Morris ("Leander"), who died in 2002 and is survived by his three children, Leander Morris, Jr. ("Leander, Jr."), Lee Morris ("Lee"), and DeShawna Morris ("DeShawna"); 4) Learinza; 5) Leon Morris ("Leon"); 6) Sarah Morris Stormer ("Sarah"); 7) Daisy; 8) Arquillia Morris ("Arquillia"); 9) Evangelo Morris ("Vann"); 10) Mitchell Morris ("Mitchell"); 11) Virginia; 12) Martin L. Morris ("Martin"), who died at age seven; 13) David Morris ("David"); 14) Levi; and 15) Jemina Morris Ferguson ("Jemina").

Vann opened his parents' successions and was appointed administrator on April 1, 2005. According to the detailed descriptive list filed by Vann at the time the succession was opened, the succession's assets consisted of a four-acre tract of land with buildings and improvements and another four-acre tract of land (for a total of eight acres) in Folsom, Louisiana (collectively "the property"), which had a total combined value of $34,000.00. This value was based on an appraisal of the property

2

dated March 1, 2005. There was also a trailer located on the property,[1] the value of which was specifically excluded from the March 1, 2005 appraisal because it "[had]wheels, axles, tongue, and hitch still intact (not a permanent foundation)" and was "in poor condition with rotted sills, major structural damage, rotted siding, and a poor roof."

On April 1, 2021, Virginia filed a motion seeking to remove Vann as the administrator of the succession ("the first motion to remove"), claiming that: he resided outside the state and failed to appoint a resident agent for service of process in Louisiana; he failed to deposit money he collected for the succession into a bank account; he paid debts of the succession without authorization; he failed to file an annual account; he failed to post an adequate bond; he failed to preserve, repair, maintain, and protect the property of the succession; and he failed to close the succession as soon as possible. Virginia also sought to be appointed administratrix of the succession.

Just prior to hearing on the first motion to remove that was scheduled for June 23, 2021, Vann obtained an updated appraisal of the property, which was dated May 20, 2021, that valued the property at $64,000.00. Again, the trailer was given no value for the same reasons set forth in the March 1, 2005 appraisal. Following the May 20, 2021 appraisal, Vann entered into a purchase agreement with Mary on June 15, 2021, whereby Mary agreed to purchase the property from the succession for $64,000.00.

On June 18, 2021, pursuant to La. C.C.P. arts. 3281-3284, Vann filed a petition seeking authority from the trial court to sell the property to Mary at private sale for the sum of $64,000.00 ("the petition seeking authority").

On June 23, 2021, an evidentiary hearing was held on the first motion to remove. However, prior to taking evidence, Vann's petition seeking authority was

---

[1] It is undisputed that the trailer was purchased and placed on the property by the decedents for the purpose of providing Sarah and her children with a place to reside after she was estranged from her husband.

3

discussed at length in open court, where both Virginia and Learinza were present in open court with counsel. After the presentation of Virginia's evidence on the first motion to remove, which consisted of the testimony of Learinza and Virginia, Vann moved for an involuntary dismissal, which the trial court granted, thereby denying Virginia's first motion to remove. In doing so, the trial court stated:

> This is an unfortunate situation where I think it has become decisive with the family of 15 kids, and the [c]ourt does have discretion in a matter like this as to whether or not to remove the administrator.
>
> I do feel as though this succession should have been closed already; however, it's now in a posture to be closed, and so the [c]ourt still feels as though it would be a disservice at this time to the family to remove [Vann] as the administrator.
>
> The [c]ourt notes that even though testimony was given, there's really no testimony that [Vann] absconded with any succession funds or really that he didn't use a greater portion of his own money to pay the debt and the taxes than the money he received.
>
> But this succession does need to be closed. ....
>
> ... I am going to grant the involuntary dismissal, and I'm going to deny the [first] motion to remove [Vann] as the administrator.
>
> However, if this succession is not closed within the next six months, then the [c]ourt would entertain another motion to have [Vann] removed. Again, there are some technical violations, but my feeling is that the best thing is to go forward and let the succession be closed.

A judgment in accordance with the trial court's ruling was signed in open court on June 23, 2021.

On August 11, 2021 and on September 1, 2021, Vann published a notice of the petition seeking authority in the *St. Tammany Farmer* (the local newspaper in St. Tammany Parish), and he filed proof of that publication in the record on September 14, 2021. On October 12, 2021, the Clerk of Court filed a certificate of publication and of no opposition. Thereafter, the trial court authorized Vann to sell the property for the sum of $64,000.00 pursuant to a judgment signed on October 15, 2021 ("the judgment authorizing the sale").

On March 3, 2022, Vann filed a petition to file a descriptive list (final and amended) and proposed tableau of distribution, asserting that the sole asset of the

4

succession—the property—had been sold and liquidated on November 9, 2021, and that he sought to pay all administrative expenses and to distribute the net proceeds of the sale in the appropriate amounts to all the heirs. Attached to that petition were waivers and receipt of legacy acknowledgements signed by himself (Vann), Mary, Sammie, Leander, DeShawna, Leon, Sarah, Arquillia, Mitchell, and David, wherein they acknowledged receipt and approval of the amended and final descriptive list and proposed tableau of distribution.

On March 17, 2022, a motion to remove Vann as the administrator of the succession was filed by the opposing heirs ("the second motion to remove"). In the second motion to remove, the opposing heirs noted and urged the same grounds set forth in the first motion to remove (filed by Virginia), and further noted that it had been more than six months since the hearing on that motion, that the succession had still not been closed, and that the trial court stated at the previous hearing it would entertain another motion to remove Vann as administrator if the succession was not closed within six months. The opposing heirs claimed that Vann had neither provided them with notice of the petition seeking authority nor afforded them the opportunity to oppose it. While the opposing heirs acknowledged that Vann requested and published the petition seeking authority in the local newspaper, the *St. Tammany Farmer*, they argued that that publication did not constitute notice to the heirs since several of them resided outside of St. Tammany Parish. The opposing heirs also claimed that the petition seeking authority was not served on any of the heirs of the succession, that Vann refused to entertain Learinza's offer to purchase the property, and that he disregarded Learinza's and Daisy's opposition to the sale. The opposing heirs further claimed that Vann failed to preserve and protect the property by failing to secure insurance on the decedents' house, which apparently burned during Vann's administration of the succession, and thus, he deprived the heirs of this inheritance. Therefore, the opposing heirs sought to have Vann removed as administrator, to grant a new trial as to the petition seeking authority and the

5

judgment authorizing the sale, to place the property of the succession into the registry of the court, and to have Virginia appointed as administratix of the successions.

On April 6, 2022, Vann filed a motion seeking to have his request to have the proposed tableau of distribution approved and to disburse the funds to the heirs set for hearing, as well as the second motion to remove him as administrator set for hearing. Vann also maintained that, despite the allegations of the opposing heirs, he strictly complied with all of the statutory formalities required to sell the succession's interest in the property. Vann also maintained that he took several additional and extraordinary steps outside of the statutory requirements to communicate with his siblings and to provide them all a reasonable opportunity to cooperate with the sale, to object to the sale, or to provide reasonable alternatives to the sale, but that no sibling except for Mary stepped forward to purchase the property, which allowed the estate to be liquidated and settled. Vann also filed an opposition to the second motion to remove, claiming that the sale of the property of the estate occurred in strict adherence to Louisiana law, and that Learinza only complained about the sale and the valuation of the property in March 2022, several months after the sale had been concluded. Vann also pointed out that the notice of proposed sale was published twice, that no opposition was filed by any heir, and therefore, he sold the property pursuant to the judgment authorizing the sale. Vann also argued that Louisiana law did not require service of the petition for authority, that he communicated with the other heirs before he sold the property, and that the sale of the property was discussed at length at the June 23, 2021 hearing.

On May 25, 2022, the opposing heirs filed a motion to traverse the sworn detailed descriptive list (both the original and amended) on the basis that it did not include either the house in which the decedents resided or the trailer, which were (or had been) located on the property. On that same date, the opposing heirs also filed an opposition to the tableau of distribution and an application for accounting by the

administrator, questioning the difference between the net proceeds of the sale from the gross proceeds of the sale, as well as whether the decedents' house and the trailer would remain in the administrator's possession for distribution or whether any value would be received, and demanding that those assets be accounted for. They also claimed that there was no necessity for an administration of the estate and opposed the administrative expenses and attorney fees listed by Vann. They requested that his proposed tableau of distribution be denied.

Although not contained in the record of this succession proceeding, the opposing heirs allege in their writ application and appellate brief that on April 26, 2022, they commenced a new, separate proceeding in district court seeking the rescission of the sale of the estate's immovable property for lesion beyond moiety and for damages, naming as defendants, Vann, in his capacity as the administrator of the succession, and Mary, and bearing docket number 2022-11799 ("the petition seeking rescission based on lesion" or "the lesion proceedings"). According to the opposing heirs, but again, not contained in the record of this succession proceeding, this new lesion proceeding was "transferred" to the same trial court division presiding over this succession proceeding by order dated June 27, 2022. However, the opposing heirs admit that the two cases—the succession proceeding and the lesion proceeding—were never formally consolidated and that answers to the petition seeking rescission based on lesion were not filed by either Vann or Mary.[2]

A hearing was scheduled in the succession matters on September 9, 2022. On that date, prior to the start of the hearing, the trial court noted that the matters before it were the second motion to remove, Vann's motion to approve the tableau of

---

[2] In the opposing heirs' appellate brief to this Court, they acknowledge that the petition seeking rescission based on lesion was not contained in the record of this succession proceeding and that the lesion proceeding was never consolidated with the succession proceeding. The opposing heirs claim that they filed a motion for leave to submit the petition seeking rescission based on lesion to this Court for review in conjunction with this appeal. However, this Court's records do not contain or reveal that any such motion was filed. Furthermore, because the opposing heirs admit that the lesion proceeding was never consolidated into the succession proceeding, it would be inappropriate to order the supplementation of the record of the succession proceeding with a pleading that is not part of its record or consolidated with it.

7

distribution of funds to the heirs, and the opposing heirs' motion to traverse the sworn detailed descriptive list. The trial court also noted that there were two new actions—"one for lesion" and "one to have the sale declared as null and void for lack of service on two of the absentee heirs."[3] Thereafter, the trial court stated that before it could take up the lesion proceeding and the action to have the sale declared null for lack of proper service, it "need[ed] an agreement by the parties to go forward today because [those matters were] not properly noticed for [the] hearing." The trial court was then advised that both sides were prepared to go forward and that Vann and Mary waived service.

At the hearing, following the presentation of the opposing heirs' evidence, Vann moved for an involuntary dismissal on the second motion to remove, which the trial court granted, thereby denying the second motion to remove. Vann also sought to dismiss the petition seeking rescission based on lesion for its failure to state a cause of action, but the trial court declined to rule on the issue at that time.[4] The trial court ordered briefs and took the issue of whether the sale should be annulled based on the lack of service of the petition seeking authority under advisement.[5] The trial court received additional evidence on the petition seeking rescission based on lesion, and at the conclusion of the evidence, found that the opposing heirs failed to meet their burden of proof and dismissed the claim. The

---

[3] Neither the record before us nor the briefs submitted to this Court contain any information about a purported suit "to have the sale declared as null and void for lack of proper service." It is unclear whether such suit was another new action (separate from succession proceeding and the lesion proceeding) or whether it was part of the petition seeking rescission based on lesion (and thus part of the lesion proceeding).

[4] In regard to the objection of no cause of action, Vann maintained that, pursuant to La. C.C. art. 2589, the rescission of a sale of immovable property based on lesion could only be claimed by the seller and only in sales of immovable property—not in sales made by order of the court, which has been interpreted to include the sale of succession property authorized by the court. See **Succession of Chambers v. Chambers**, 98-937 (La. App. 3rd Cir. 12/9/98), 729 So.2d 608, 611. Vann further maintained that since the opposing heirs were not the seller and since the sale of the succession property was authorized by the trial court, the opposing heirs had not stated a cause of action. Because we find, for reasons detailed herein, that all issues relating to the lesion proceeding are not appropriately before us and further, because we are unable to review the petition seeking rescission based on lesion because it is not in the record before us to determine whether it states a cause of action, we need not address the issue.

[5] See footnote 3.

8

remaining issues relative to the proposed tableau of distribution and detailed descriptive list were continued without date.

On January 17, 2023, the trial court issued written reasons for judgment finding that the opposing heirs had actual notice of the petition for authority; that under La. C.C.P. arts. 3261, 3281, and 3282, the opposing heirs were not required to be formally served with that pleading or the judgment authorizing the sale; and that Vann strictly followed the procedures mandated by law.[6]

On January 17, 2023, the trial court signed a judgment denying the second motion to remove and denying, with prejudice, the petition seeking rescission based on lesion. The opposing heirs filed an application for supervisory writs, seeking review of the trial court's ruling with respect to the denial of the second motion to remove; they also appealed the January 17, 2023 judgment, likewise challenging the trial court's ruling with respect to the second motion to remove, as well as the trial court's ruling on their petition seeking rescission based on lesion. The supervisory writ application was referred to this panel for resolution. See **Successions of Daisy Lee Morris, wife of/and Levi Morris**, 2023-0312 (La. App. 1st Cir. 6/26/23) (*unpublished writ action*).

---

[6] We note that the trial court stated at the hearing that it was taking the issue of whether the sale should be annulled for lack of service of the petition seeking authority under advisement. While the trial court's written reasons for judgment find that service was not necessary, they contain no express ruling on the annulment of the sale. However, the denial of the relief sought is implied. Furthermore, the January 17, 2023 judgment subsequently signed by the trial court is silent with respect to the annulment of the sale based on lack of service. Therefore, the relief sought is deemed denied. See **Schoolhouse, Inc. v. Fanguy**, 2010-2238 (La. App. 1st Cir. 6/10/11), 69 So.3d 658, 664 (providing that generally, silence in a judgment of the trial court as to any issue, claim, or demand placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied).

As detailed in footnote 3, while the record is not clear as to exactly how the issue of annulling the sale based on lack of service was before the trial court, the opposing heirs contend that the trial court's determination that service was not necessary was erroneous in both their challenge to the trial court's ruling on the second motion to remove and its ruling on the petition seeking rescission based on lesion. While we find, for reasons set forth herein, that all issues relating to the petition seeking rescission based on lesion are not properly before us, because the lesion proceeding is not properly before us, we find the trial court's ruling and written reasons for judgment regarding whether service was necessary pertinent to issues raised herein with regard to the second motion to remove.

9

## JURISDICTION

Appellate courts have the duty to determine *sua sponte* whether their subject matter jurisdiction exists, even when the parties do not raise the issue. **Advanced Leveling & Concrete Solutions v. Lathan Company, Inc.**, 2017-1250 (La. App. 1st Cir. 12/20/18), 268 So.3d 1044, 1046 (*en banc*). This court's appellate jurisdiction extends to final judgments and to interlocutory judgments when expressly allowed by law. See La. C.C. P. art. 2083(A) and (C). A final judgment is one that determines the merits of a controversy in whole or in part; in contrast, an interlocutory judgment does not determine the merits, but only preliminary matters in the course of an action. La. C.C.P. art. 1841. In addition, La. Const. art. V, § 10(A) provides that a court of appeal has "supervisory jurisdiction over cases which arise within its circuit."

The January 17, 2023 judgment on appeal herein determines, in part, a preliminary matter in the succession proceeding, *i.e.*, the denial of the second motion to remove. As such, that portion of the judgment is interlocutory. The judgment also determines the merits of the petition seeking rescission based on lesion. Therefore, that portion of the January 17, 2023 judgment is final pursuant to La. C.C.P. art. 1841. Accordingly, we will separately address each portion of the January 17, 2023 judgment as it relates to jurisdiction and this appeal.

### *Second Motion to Remove*

Subject to certain exceptions, appeals from orders or judgments rendered in succession proceedings are governed by the rules applicable to ordinary proceedings. La. C.C.P. art. 2974. The Louisiana Code of Civil Procedure grants the right to an immediate appeal of certain judgments rendered in succession proceedings. **Succession of Saucier**, 2021-1466 (La. App. 1st Cir. 6/29/22), 344 So.3d 108, 113. Included therein are judgments confirming, appointing, or removing a succession representative. See La. C.C.P. arts. 2122 and 2974; **Succession of LeBoeuf**, 2013-0209 (La. App. 1st Cir. 9/9/14), 153 So.3d 527, 533; **Succession of**

10

*Jaga*, 2016-1291 (La. App. 1st Cir. 9/15/17), 227 So.3d 325, 327-328. However, the judgment on appeal herein *denies a motion to remove* an administrator; it does not remove, appoint, or confirm a succession administrator. Therefore, the appeal of this interlocutory judgment is not specifically authorized by law. Accordingly, this Court lacks appellate jurisdiction over the portion of the judgment denying the second motion to remove and that portion of the appeal must be dismissed.[7]

However, review of an interlocutory judgment by this Court for which an appeal is not expressly authorized may be obtained through an application for supervisory writs filed within thirty days of the interlocutory judgment. See La. Const. art. V, § 10(A); La. C.C.P. art. 2201; **Matter of Succession of Blahut**, 2021-1221 (La. App. 1st Cir. 4/8/22), 342 So.3d 98, 101 n.3; Uniform Rules—Courts of Appeal, Rule 4-3. In this case, the judgment was filed and signed on January 17, 2023, and the notice of judgment was mailed on January 19, 2023. The opposing heirs timely filed a notice of intent to file an application for supervisory writ on February 22, 2023, a return date was set for March 30, 2023, and the application for supervisory writ timely was filed on March 30, 2023.[8] The opposing heirs' supervisory writ application was referred to this panel for resolution; therefore, we will review the merits of the interlocutory portion of the January 17, 2023 judgment under our supervisory jurisdiction.

---

[7] We recognize that when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment. **Bourg v. Safeway Insurance Company of Louisiana**, 2019-0270 (La. App. 1st Cir. 3/5/20), 300 So.3d 881, 887. However, because we find, for reasons detailed hereinbelow, that an unrestricted appeal of a final judgment is not properly before us, the opposing heirs are not entitled to seek review of this interlocutory ruling on appeal.

[8] Thirty days after the January 19, 2023 mailing of notice of judgment was Saturday, February 18, 2023. In computing a period of time, the last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday. See La. C.C.P. art. 5059(A). The following Monday was Monday, February 20, 2023, which was President's Day and a legal holiday. The next day was Tuesday, February 21, 2023, which was Mardi Gras and a legal holiday. See La. R.S. 1:55(A)(1). The next day, which was not a legal holiday, was Wednesday, February 22, 2023, and the notice of intent to file supervisory writ was filed thereon. Thus, the notice of intent to file supervisory writ was timely filed, and the writ was timely filed within the return date set by the trial court. See **Spangler v. Chiasson**, 95-2113 (La. App. 1st Cir. 4/22/96), 681 So.2d 956, 957 n.2 (noting that it the notice of intent to seek supervisory writ was filed within thirty days of the ruling at issue, this Court has interpreted a return date set outside of the thirty-day period as an implicit extension of the return date by the trial court).

11

*Petition Seeking Rescission Based On Lesion*

A valid, appealable final judgment must be precise, definite, and certain. It must contain appropriate decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. **Advanced Leveling & Concrete Solutions**, 268 So.3d at 1046. These determinations should be evident from the language of the judgment without reference to other documents in the record. *Id.* In the absence of appropriate decretal language, the judgment is defective and cannot be considered a final judgment for purposes of appeal. See **Advanced Leveling & Concrete Solutions**, 268 So.3d at 1046-1047.

In this case, with respect to the petition seeking rescission based on lesion, the January 17, 2023 judgment provides "**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that the Opposing Heirs' Petition for Rescission of Sale of Estate Immovable Property for Lesion beyond Moiety and Damages is **denied with prejudice**." Thus, while it is evident that the petition seeking rescission based on lesion was denied, the judgment does not contain appropriate decretal language dismissing that petition. The absence of decretal language dismissing the petition renders the judgment defective, and thus, cannot be considered a final judgment for purposes of appeal. See **Sauce v. Burke**, 2022-0541 (La. App. 1st Cir. 11/7/22), 356 So.3d 439, 445.

Generally, when a judgment is defective because it does not contain appropriate decretal language, this Court must remand the matter for the limited purpose of instructing the trial court to sign an amended judgment that is precise, definite, and certain and contains appropriate decretal language. *Id.*; see La. C.C.P. arts. 1918(A), 1951, and 2088(A)(12); **Hill v. International, Inc. v. JTS Realty Corp.**, 2021-0157 (La. App. 1st Cir. 12/30/21), 342 So.3d 322, 327-328.

However, in this case, we find remand is not necessary because neither the petition seeking rescission based on lesion nor the lesion proceeding itself is properly

before us. The motion for appeal in this matter was filed and granted in the succession proceeding, and the record lodged with this court is the trial court record from the succession proceeding. Although the record reveals that all of the purported parties in the lesion proceeding—the opposing heirs and Vann and Mary—agreed to hear the petition seeking rescission based on lesion in conjunction with the second motion to remove (and the other matters that were pending in the succession proceeding), the opposing heirs have admitted and it is undisputed that the petition seeking rescission based on lesion was filed in a separate suit from the succession proceeding and that that suit (the lesion proceeding) was not consolidated with the succession proceeding.[9] Therefore, because the lesion proceeding was not consolidated with the succession proceeding, we find that any issues on appeal relative to the petition seeking rescission based on lesion are not properly before us and that portion of the appeal must be dismissed.[10]

## REMOVAL OF ADMINISTRATOR

A party seeking removal of a succession representative must prove by convincing evidence that the representative either breached his fiduciary duty to the succession under La. C.C.P. art. 3191[11] or the existence of one of the grounds for removal enumerated in La. C.C.P. art. 3182. **Succession of Dean**, 2017-0155 (La. App. 1st Cir. 3/29/18), 247 So.3d 746, 762, writ denied, 2018-00679 (La. 9/14/18), 252 So.3d 479. The grounds set forth in La. C.C.P. art. 3182 include disqualification, incapability of discharging the duties of office, mismanagement of

---

[9] We note that the opposing heirs allege, but the record does not reveal, that the lesion proceeding was transferred to the same division of the trial court that presided over the succession proceeding. Nonetheless, even if the lesion proceeding was transferred, it was never consolidated. Therefore, it is not properly before this Court in this appeal from the succession proceeding. See La. C.C.P. arts. 253.2 and 1561.

[10] Nothing precludes the opposing heirs from obtaining a final judgment, with appropriate decretal language, in the lesion proceeding and appealing that judgment in the manner provided by law.

[11] Louisiana Code of Civil Procedure article 3191(A) provides that "[a] succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act."

13

the estate, failure to perform any duty imposed by law or court order, ceasing to be a domiciliary of the state without appointing an agent, or failing to give notice of his application for appointment when required by law.

A trial court is authorized to remove a succession representative only after such a showing is made. **Dean**, 247 So.3d at 763. At that point, the trial court is vested with discretion in determining whether removal of a succession representative is appropriate under the particular facts. Absent an abuse of discretion, the trial court's decision regarding whether a succession representative should be removed will not be disturbed on review. See *Id.*

As previously set forth, in the second motion to remove, the opposing heirs pointed to the grounds set forth in the first motion to remove, *i.e.* failing to preserve, maintain, and protect succession property; failing to close the succession as soon as possible; failing to appoint a resident agent while he lived out of state; failing to deposit money he collected for the successions into a bank account; failing to file an annual account; and failing to post an adequate bond. They also claimed that Vann should be removed as administrator because the succession was still not closed, even though it had been more than six months since the hearing on the first motion to remove; Vann neither provided them with notice of his petition seeking authority nor afforded them the opportunity to oppose it, arguing that publication in the *St. Tammany Farmer* did not constitute notice to the heirs because several of the heirs reside outside of St. Tammany; and the heirs were not served with the petition seeking authority or provided notice. The opposing heirs also claimed that they obtained an appraisal of the property on July 8, 2021, that Vann refused to entertain Learinza's offer to purchase the property and disregarded Learinza's and Daisy's opposition to the sale, and that Vann failed to preserve and protect the property and to secure insurance on the decedents' house, which burned during Vann's administration of the succession and deprived the heirs of their inheritance.

14

Also, as previously set forth, at the hearing in this matter, the trial court granted Vann's motion for involuntary dismissal and denied the second motion to remove.[12] In doing so, the trial court provided the following oral reasons:

> One, could Vann have communicated a little better with the rest of the family? From what I'm hearing, he probably could have and he should have, but once lawyers get involved, by no fault of the lawyers, there are certain rules that apply with respect to communication, and whether or not Vann was legally prohibited from communicating with the two people that actually brought suit against him or not, he felt like he could not communicate.

* * *

> But I think that everybody who testified came across as credible, but I thought Vann came across as very credible. He testified that he did his best to advise everybody. He had a text string which included everybody but the two of y'all, so even though he could have communicated better, I don't think what he did rose to the level that he should be removed as the administrator.

> At the time, one thing I was really looking at to see here today is when Vann would have received the July 8, 2021 appraisal, because he agreed to sell the property for $64,000.[00]. That appraisal was done July 8, 2021.

> Had [Vann] received [the July 8, 2021 appraisal] before he went forward with the sale, then I would have some serious questions as to whether or not he should be removed, and my opinion may be different. But there was no testimony that he actually received or that his attorney received that appraisal before the sale was completed.

> ...[also] there's been no definitive, there was no testimony or any evidence of any definitive communication from any of the opposing heirs to Vann of their willingness to purchase the property after June of 2021

> Now, I know that [Learinza] testified that he was trying to do his workup and diligence in order to buy the property, and again, I wish there was more communication because maybe that would have changed things, but I didn't see where anybody had actually communicated to Vann that they were willing to pay a certain price for that property before he actually sold it.

---

[12] Louisiana Code of Civil Procedure article 1672(B) provides that in an action tried by the court without a jury, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for involuntary dismissal at the close of the plaintiff's case on the ground that upon the facts and law, the plaintiff has shown no right to relief. In deciding whether to grant a motion for involuntary dismissal, the trial court must weigh and evaluate the evidence up to that point and ascertain whether the plaintiff has presented sufficient evidence in his case in chief to establish his claim by a preponderance of the evidence. See **Taylor v. Tommie's Gaming**, 2004-2254 (La. 5/24/05), 902 So.2d 380, 384; **Jackson v. Capitol City Family Health Center**, 2004-2671 (La. App. 1st Cir. 12/22/05), 928 So.2d 129, 131. A trial court's decision with regard to a motion for involuntary dismissal pursuant to La. C.C.P. art. 1672(B) should not be reversed unless it is manifestly erroneous or clearly wrong. *Id.*

15

So based on all of those reasons, I don't think that there was enough evidence ... to justify removing [Vann] as the administrator. I don't think there was enough evidence to show that he breached a fiduciary duty to the heirs in the succession.

Additionally, in the trial court's written reasons for judgment, relevant to the issue of providing the heirs with notice of the petition seeking authority, the trial court stated as follows:

> Based on the testimony given by the [o]pposing [h]eirs at the September 9, 2022, hearing, the [c]ourt finds that they had actual notice of the ongoing proceedings either through personal conversations, emails between counsel representing the parties, and a private family Facebook page. However, the [o]pposing [h]eirs contend that because formal service of process of the ... petition for authority ... filed by Vann and the judgment [authorizing the sale] was not made, they were deprived of the opportunity to formally oppose the sale.

> * * *

> Based on the above chronology and the evidence in the record, Vann strictly followed the procedures mandate by the [Louisiana] Code [of Civil Procedure]. Except for La. C.C.P. art. 3293, dealing with an exchange of succession property, no requirement exists that formal service be made on all heirs for a private sale to take place provided such sale has been approved by the court, as it was in this case.

In the opposing heirs' writ application, they seek the reversal of the trial court's ruling on the second motion to remove. In addition to their arguments as to Vann's failure to notify them of the petition seeking authority and his alleged mismanagement and failure to preserve and/or protect the property, they also assert that Vann failed to close the succession as soon as possible, failed to open a succession account for funds and failed to deposit funds collected from other heirs, failed to provide an annual account of receipts and disbursements, and failed to post adequate security. On the other hand, Vann asserts that the trial court did not abuse its discretion in denying the motion to remove because he strictly followed the procedures mandated by the Louisiana Code of Civil Procedure and the remaining heirs had actual notice of the sale and the trial court properly rejected the remaining grounds for removal.

Therefore, we must determine: (1) whether the trial court was clearly wrong in concluding that under the facts and law, the opposing heirs failed to show that

Vann either breached his fiduciary duty to the succession or the existence of one of the grounds for removal as administrator, *i.e.*, disqualification, incapability of discharging the duties of office, mismanagement of the estate, failure to perform any duty imposed by law or court order, has ceased to be a domiciliary of the state without appointing an agent, or has failed to give notice of his application for appointment when required by law; and (2) whether the trial court abused its discretion in denying the second motion to remove. See La. C.C.P. arts. 3182 and 3191; **Succession of Dean**, 247 So. 3d at 762-763.

*Failure to Perform a Duty Required by Law: Failure to Serve the Petition to Sell*

A succession representative may sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court as provided by law. La. C.C.P. art. 3261. Louisiana Code of Civil Procedure article 3281 provides:

> A. A succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of and the reasons for the proposed sale. If an agreement to sell has been executed in accordance with Paragraph B of this Article, a copy of such agreement shall be annexed to the petition.
>
> B. A succession representative may execute, without prior court authority, an agreement to sell succession property at private sale, subject to the suspensive condition that the court approve the proposed sale.
>
> C. The succession representative shall be obligated to file a petition in accordance with Paragraph A of this Article within thirty (30) days of the date of execution of such an agreement to sell.

Additionally, La. C.C.P. art. 3282 sets forth the publication requirements for a private sale as follows:

> Notice of the application for authority to sell succession property at private sale shall be published ... at least twice for immovable property, in the manner provided by law. A court order shall not be required for the publication of the notice.
>
> The notice shall be published in the parish in which the succession proceeding is pending. When immovable property situated in another parish is to be sold, the notice shall also be published in the parish in which the property is situated.
>
> The notice shall state that any opposition to the proposed sale must be filed within seven days from the date of the last publication.

17

An opposition to a proposed private sale of succession property may be filed only by an heir, legatee, or creditor. La. C.C.P. art. 3283. An opposition shall be tried as a summary proceeding. La. C.C.P. art. 3284(C). If no opposition has been timely filed and the court considers the sale to be in the best interest of the succession, the court shall render an order authorizing the sale and shall fix the minimum price to be accepted. La. C.C.P. art. 3284(A). The approval of an application to sell succession property at private sale rests within the sound discretion of the trial court. **In re Succession of Cannata**, 2014-1546 (La. App. 1st Cir. 7/10/15), 180 So.3d 355, 372, writ denied, 2015-1686 (La. 10/30/15), 180 So.3d 303.

Herein, Vann executed a purchase agreement with Mary on June 15, 2021, whereby Mary agreed to purchase the property from the succession for $64,000.00. This purchase agreement was executed prior to Vann filing the petition seeking authority or otherwise receiving authority to sell the property. However, as set forth in La. C.C.P. art. 3281(B), a succession representative may execute, without prior court authority, an agreement to sell succession property. Thereafter, on June 18, 2021, and in accordance with time period set forth in La. C.C.P. art. 3281(C), Vann filed the petition seeking authority to sell the property to Mary at a private sale for the sum of $64,000.00, with a copy of the purchase agreement attached. The heirs were not formally served with the petition seeking authority; however, in accordance with La. C.C.P. art. 3282, notice of the petition seeking authority was published twice—on August 11, 2021 and on September 1, 2021—in the *St. Tammany Farmer*, the newspaper for the parish in which the succession was pending and the property was located. Pursuant to La. C.C.P. art. 3282, the notice provided that any opposition to the proposed sale had to be filed within seven days of the date of the last publication notice. No objection was filed within seven days of the date of the last publication of the notice of petition seeking authority, and the trial court approved the sale on October 15, 2021 in accordance with La. C.C.P. art. 3284.

18

Thus, we Vann complied with the requirements set forth in La. C.C.P. arts. 3281-3284 for selling immovable property of the succession by private sale.

Nonetheless, the opposing heirs maintain that they should have been formally served with the petition seeking authority and that the notice by publication was insufficient because they were non-residents. Thus, the opposing heirs claim they were not afforded the opportunity to object to the sale. In support of their contention regarding service, the opposing heirs rely on **Succession of Doll**, 197 So.2d 342 (La. App. 2nd Cir. 1967) and **Succession of Chisholm**, 53,771 (La. App. 2nd Cir. 3/3/21), 314 So.3d 1056.

In **Succession of Doll**, 197 So.2d at 343, the plaintiff, who was an heir of the decedent, filed a petition to annul the private sale of immovable property of the succession, and the trial court dismissed that action based on a peremptory exception raising the objections of no cause of action and no right of action. Among other things, the basis of the plaintiff's petition was that neither the petition for the authority to sell the property nor the court order authorizing the sale set forth, with any degree of certainty, a price for which the property might be sold; notice of the petition for authority to sell the property had not been published; and the plaintiff, as an heir, had no actual notice or knowledge and was not afforded the opportunity to oppose the private sale. *Id.* The court of appeal reversed, finding that the plaintiff had stated a cause of action to annul the sale because he did not receive either actual notice of the petition for authority to sell or notice by publication. Additionally, the court of appeal found that the plaintiff, as an heir, had the right to oppose the private sale, and thus, had a right of action to annul it. *Id.* at 343-344.

In **Succession of Chisholm**, 314 So.3d at 1058, the decedent died intestate, leaving one minor child from a previous marriage as his heir, and the decedents' father was appointed as administrator of the succession. To protect the minor child's interest in assets of the succession, the minor child's mother filed a notice of appearance and an answer. The decedent died leaving a 51% membership interest

19

in a limited liability company ("LLC"). The administrator sought and obtained authority from the trial court to sell the decedent's membership interest in the LLC pursuant to La. C.C.P. art. 3285, which permits a succession representative to sell bonds and shares of stock at private sale at rates prevailing in the open market pursuant to a court order based upon a petition, without the necessity of advertising. The minor child's mother was not served with the petition. Thereafter, the administrator filed a petition for homologation of the final account, and the trial court rendered and signed a judgment approving and homologating the final account, discharging the administrator, and placing the remaining monies of the estate into a bank account for the child. Again, the child's mother was not served with a copy of the petition for homologation of the final account or the judgment approving and homologating the final account. The child's mother filed a motion for new trial regarding the judgment approving the sale. The motion for new trial was denied, and the child's mother appealed. The child's mother also filed a petition seeking to nullify the sale of the decedent's membership interest in the LLC and for damages, which was still pending at the time of the appeal.

On appeal, the appellate court determined that the trial court erred in authorizing the sale of the LLC membership interest pursuant to La. C.C.P. art. 3285, because the membership interest was neither a stock or bond nor did it have a value in the open market. *Id.* at 1059-1060. Thus, the appellate court determined that the provisions set forth in La. C.C.P. art. 3281 and 3282 were applicable, including the requirements of publication of the notice of sale, the opportunity for an heir to oppose the sale, and the opportunity for the court to provide judicial oversight to ensure that the sale was for a fair price. *Id.* at 1060. In addition, the appellate court noted that the child's mother was not served with a copy of the petition for homologation of the final account or the judgment approving and homologating the final account, contrary to the express provisions of La. C.C.P. art. 3335. *Id.* at 1061-

20

1062. Thus, the appellate court concluded that the trial court erred in denying the mother's motion for new trial. *Id.* at 1062.

We find that both **Succession of Doll** and **Succession of Chisholm** are distinguishable from the present case and do not support the opposing heirs' argument that formal service of a petition seeking authority to sell immovable property of the succession by private sale was *required*. Indeed, neither case specifically addressed that issue. Rather, the appellate court in **Succession of Doll** determined that the plaintiff had stated a cause of action to annul the sale because he did not receive either actual notice of the petition for authority to sell or notice by publication, whereas in this case, the trial court found the opposing heirs received actual notice of the petition seeking authority (as discussed hereinafter) and they also received notice by publication. In **Succession of Chisholm**, the appellate court determined that a new trial was warranted because neither the administrator nor the trial court complied with *any* of the requirements set forth in La. C.C.P. arts. 3181-3184 for selling the property of the succession at private sale, whereas in this case, it was determined that Vann did comply with those requirements.

In finding that Vann did comply with the requirements set forth in La. C.C.P. arts. 3181-3184, we find **Succession of Garside**, 2021-1208 (La. App. 1st Cir. 4/11/22), 2022 WL 1074606, writ denied, 2022-00777 (La. 9/20/22), 346 So.3d 282 instructive. Therein, the decedent died intestate leaving her three children as heirs. One of the heirs was appointed administrator of the succession, and thereafter, filed an application with the court to sell immovable property of the succession at a private sale. The application was advertised twice, as required by La. C.C.P. art. 3282, the administrator filed a petition for homologation of the application for authority to sell, and the trial court signed a judgment homologating the administrator's application. *Id.* at *1.

One of the other heirs filed an action to annul the judgment, arguing that neither she nor her counsel received notice of the application for authority to sell.

21

The trial court denied the relief sought. *Id.* In affirming the judgment of the trial court, this Court noted that the record contained evidence of notice to the heir and her counsel, as the application for authority to sell the immovable property included a certificate of service stating that a copy of the pleading "[h]ad been mailed, emailed, and/or faxed to all counsel of record." *Id.* at *2. Although the heir argued and submitted evidence that neither she nor her attorney had received a copy of the notice by mail, email, or fax, this Court further noted that, "even though they may not have received the notice by mail, the heir and her attorney had the same notice everyone else had when the sale was advertised twice." *Id.*

After finding no manifest error in the trial court's determination that the heir received notice of the petition for authority based on a certificate of service and by publication, and that the administrator complied with the requirements of law, this Court concluded that the heir was not entitled to annul the judgment authorizing the sale. *Id.* at *3.

We recognize, as pointed out in **Succession of Garside**, that La. C.C.P. art. 2971 provides, in part that "[e]xcept as otherwise provided by law, the rules of pleading and service of process applicable in ordinary proceedings shall apply to succession proceedings"[13] and that "[a] certified copy of the petition, opposition, contradictory motion, or rule *initiating a contradictory succession proceeding* shall be served on the *adverse party.*" (Emphasis added). However, at the time Vann filed the petition seeking authority, neither the opposing heirs nor any of the other heirs were "parties" or "adverse parties" to either the succession proceeding or to Vann's petition seeking authority. Furthermore, the petition seeking authority was not a pleading that initiated a contradictory succession proceeding (at that time).

Thus, while the service of the petition for authority on the heirs was not made, the provisions of La. C.C.P. arts. 3281-3284 relative to requests by an administrator

---

[13] The rules of service of process in ordinary proceedings require service of pleadings on "the adverse party." See La. C.C.P. art. 1312; see also La. C.C.P. arts. 1313-1314.

22

to sell succession property at private sale do not reference or require service of process; rather, all that is required is notice by publication and the opportunity to file an opposition within seven days of the date of the last publication. La. C.C.P. art. 3282. But c.f. La. C.C.P. art. 3293 (providing that when a succession representative seeks authority to *exchange* succession property, a certified copy of the petition for authority "shall be served, as provided in [La. C.C.P. art.] 1314, on all heirs and legatees of the deceased who have not joined in [the] petition"). In this case, Vann's petition seeking authority was published twice, no opposition was filed within the appropriate time delay, and the trial court approved the sale. Thus, the requirements by law for a private sale of succession property were met and Vann's failure to serve the petition seeking authority does do not provide a basis for his removal as administrator.

As to whether notice by publication was sufficient due process to afford the heirs the opportunity to file an opposition to the petition seeking authority and/or whether the heirs were entitled to some other form of notice to ensure due process because some of the heirs, including the opposing heirs, were not residents of this state, the opposing heirs rely on La. C.C.P. art. 3171 and **Robinson v. Nunly**, 46,053 (La. App. 2nd Cir. 6/10/11), 69 So.3d 631, writs denied, 2011-1513 and 2011-1516 (La. 10/7/11), 71 So.3d 317 and 72 So.3d 348.

Louisiana Code of Civil Procedure article 3171 provides that "[i]f it appears from the record, ... that an heir of an intestate ... is an absentee, *and there is a necessity for such appointment*, the court shall appoint an attorney at law to represent the absent heir ...." (Emphasis added). An "[a]bsentee" includes "a person who is ... a nonresident of this state, ... and who has not appointed an agent for the service of process in this state ...." La. C.C.P. art. 5251(1). It is undisputed that the opposing heirs (as well as some of the other heirs), reside outside of Louisiana and have not appointed agents for service of process in Louisiana.

23

In **Robinson**, 69 So.3d at 634, the absentee heirs of a succession brought an action to annul the private sale of the succession's sole asset—a 250 acre tract of land in Bienville Parish. The administratrix had filed a petition for authority to sell the tract of land; the petition did not name the purchaser, but set forth the price for the sale. Notice of the sale was published in the *Bienville Democrat*—a local newspaper in Arcadia Parish, where the tract of land was located, and the court subsequently approved the sale. *Id.* The absentee heirs sought to annul the private sale on the basis that they had no notice of it and no attorney (or curator) was appointed to represent them; an administration and sale of the succession's sole asset was not necessary and deprived the absentee heirs of due process; and any effort to sell the property should have been handled contradictorily by partition by licitation. *Id.* at 635. However, the absentee heirs' action was dismissed pursuant to a peremptory exception raising the objection of no cause of action. *Id.*

On appeal, the appellate court pointed out that the administratrix and her agents spoke to and were informed by the absentee heirs that they did not want the property sold, but nonetheless, she opened the succession, obtained appointment as administratrix, and conducted the private sale of the succession property without informing the absentee heirs. *Id.* at 636. The appellate court also pointed out that the administratrix and her attorney knew that: two of the absentee heirs did not want their interest in the property sold; those two heirs lived out of state; their contact information was in the public records; those heirs had been contacted before the sale; and the only notice afforded of the private sale of the land was the two advertisements in the *Bienville Democrat*. *Id.* at 639. The appellate court further pointed out that no effort was made to contact the out of state heirs or to appoint an attorney to represent their interests until after the sale was concluded. *Id.* Thus, the appellate court held that the appointment of an attorney to represent the absentee heirs was a necessity, and the absentee heirs had stated a cause of action to nullify the private sale. *Id.*

24

In reaching its decision, the **Robinson** court relied on **Middle Tennessee Council, Inc., Boy Scouts of America v. Ford**, 274 So.2d 173 (La. 1973). In that case, the plaintiffs, who were three out-of-state organizations and residuary legatees in a decedent's will, sought to annul the private sale of the succession's one-third interest in a tract of land. The executor of the estate petitioned the court for authority sell the succession's one-third interest to the other co-owners of the land, the petition for authority was advertised, no opposition was filed, and the sale was subsequently authorized by the court. *Id.* at 174. The plaintiffs' action to annul was based, in part, on their claim that they had no notice of the sale and no attorney or curator had been appointed to represent them. *Id.* at 175. The Louisiana Supreme Court concluded that, where legatees of a succession were absentees and the entirety of the succession property in Louisiana was being sold at private sale, "a necessity for the appointment" of an attorney existed and was inherent in the circumstances presented. *Id.* at 176. Thus, the court held that the residuary legatees, who were to be the sole beneficiaries of the sale proceeds, were entitled to notice of, and an opportunity to oppose such sale. *Id.*

We find both **Robinson** and **Middle Tennessee Council, Inc., Boy Scouts of America** to be distinguishable. Unlike the plaintiffs in those cases, there is no contention that the opposing heirs were unaware of the proposed sale and not contacted beforehand. In fact, at the hearing on the second motion to remove, both Learinza and Virginia testified that they were present at the June 23, 2021 hearing on the first motion to remove, and Learinza admitted that the petition seeking authority and the purchase agreement with Mary were topics of discussion at that hearing. Additionally, at the June 23, 2021 hearing on the first motion to remove, the trial court stated that oppositions to the petition seeking authority would needed to be filed if there were any; however, none of the opposing heirs did so. Although the testimony at the hearing on the second motion to remove reflects that Daisy and Levi were not present at the June 23, 2021 hearing on the first motion to remove,

25

Vann specifically testified that after the June 23, 2021 hearing, he told "everyone" that he was going to sell the property (noting his communications with Daisy and Levi directly), and that if they wanted to buy the property, they needed to let him know something and they would go from there. Moreover, the evidence from the hearing on the second motion to remove reflects that Vann maintained a webpage/website for the family relating to the estate, and he testified that everything was put on the website, including the petition seeking authority and the publications thereof. Notably, the trial court in its oral reasons for granting the involuntary dismissal of the second motion to remove, found Vann to be very credible with regard to his testimony about communications with the family/other heirs.[14]

The evidence from the hearing on the second motion to remove regarding the personal communications by Vann; the correspondence, emails, and text messages between the heirs, Vann, and each party's respective counsel; and the family webpage/website, reflects that after the June 23, 2021 hearing, each of the opposing heirs was aware of the possibility of the sale of the property to Mary and that they needed to communicate their opposition to the sale or their willingness to purchase the property to Vann and/or his counsel prior to a sale. However, as the trial court found, there was no testimony or evidence of any definitive communication in this regard. Thus, although the petition seeking authority was not served on the opposing heirs and no attorney was appointed to represent them, the opposing heirs had actual notice of the proposed sale and the need to file an opposition if they had one. Thus, there was no "necessity" for the appointment of an attorney to represent the opposing heirs. See La. C.C.P. art. 3171.

Furthermore, even if Vann was required by law to serve the petition seeking authority and/or to appoint an attorney for any absentee heirs and thus failed to

---

[14] Where a trial court's factual findings are based on determinations regarding the credibility of witnesses, the trier of facts' findings demand great deference and are virtually never manifestly erroneous or clearly wrong. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). No documents or objective evidence controvert Vann's testimony, and his testimony is not otherwise implausible.

26

perform a duty imposed by law, the trial court was not required to remove Vann as administrator, but rather, was vested with discretion in determining whether removal was warranted under the facts of the case. See **Cucchero**, 845 So.2d at 452-453. Herein, the trial court found that based on all of the evidence presented, the removal of Vann as administrator was not warranted. Considering the factual findings made by the trial court, which are not manifestly erroneous, and the trial court's vast discretion in such matters, we cannot say that the trial court abused its discretion in denying the second motion to remove on this basis.[15]

*Failure To Preserve, Repair, Maintain, and Protect the Property*

Louisiana Code of Civil Procedure article 3221 states that "[a] succession representative shall preserve, repair, maintain, and protect property of the succession." A succession representative's failure to perform his duty to preserve and manage property may subject him to removal by the court. See La. C.C.P. art. 3182; **Succession of Lawless**, 415 So.2d 1008, 1009 (La. App. 4th Cir. 1982).

In the opposing heirs' second motion to remove, they also claimed that when the decedents died and their successions were opened, the estate included not only the property, but also a house and a trailer, which are both depicted in the March 1, 2005 appraisal obtained by Vann. The opposing heirs maintain that Vann failed to preserve, repair, maintain, and protect these assets and the property of the succession. They further point out that Vann failed to obtain insurance on the house, which burned during Vann's administration of the estate. The opposing heirs maintain that Vann's failure to preserve, repair, maintain, and protect the property warrants Vann's removal as administrator and deprived the heirs of their full inheritance.

As to the insuring the house, we recognize that it is the duty of the succession representative to make necessary expenditures for the preservation of succession

---

[15] In making this determination, we express no opinion as to whether the failure to serve the petition or the failure to appoint an attorney would entitle the opposing heirs to any other relief, such as annulment or rescission of the sale, as those issues are not appropriately before us herein.

27

property, including repairs, insurance, and taxes. See La. C.C.P. art. 3221, Official Revision Comments—1960 (a). However, no provision of law requires the succession representative to insure succession property. To require insurance in every case would be unwise and impractical since it would mean the insuring of every single succession effect, even one of very little or of no value. See La. C.C.P. art. 3221, Official Revision Comments—1960 (b). On the other hand, the duty to insure falls squarely within the implied duties of a prudent administrator. *Id.*

Although the exact date is not clear from the evidence or otherwise from the record, it is undisputed that the decedents' house that was located on the property burned during the early years of Vann's administration. In **Succession of Futch**, 22 So.2d 125, 126 (La. 1945), the Louisiana Supreme Court declined to find the executor at fault for failing to have certain buildings insured, when in part, there was no satisfactory evidence of the value of the buildings or evidence as to whether the executor could have obtained insurance on the buildings at any time after he became executor. The court noted that it was very doubtful that any insurance company would have taken the risk, because the buildings had been unoccupied for some time at the time of the fire and were remote from any town. *Id.* Similarly in this case, Vann asserted that the house had been vacant and dilapidated long before 2005. Further, Virginia testified to an email that she sent on March 7, 2005, which was just prior to Vann opening the succession, in which she stated that "[t]he pictures of the house made me very nausea [sic]." She further testified that "the house was not cared for," which made her "nauseous." As in **Succession of Futch**, there is no evidence of the value of the decedents' house before it burned and no evidence that Vann could have obtained insurance on the house after he became administrator.

As to the trailer, the evidence reflects that sometime in the 1980s, the decedents purchased a trailer and placed it on the property for Sarah and her children to reside in after she became estranged from her husband and that Sarah continued to live in that trailer after her parents death. As to the condition of the trailer, both

28

the March 1, 2005 appraisal and the May 20, 2021 appraisal reference a trailer that was "in poor condition [with] wheels, axles, tongue, and hitch still intact (not a permanent foundation)" and was "in poor condition with rotted sills, major structural damage, rotted siding, and a poor roof." Notably, however, these conditions existed prior to Vann's administration of the estate. Furthermore, Virginia disagreed with those statements in the appraisals and testified that the trailer was in "very good condition," that the flooring and roof been replaced, and rooms had been added on.

As to the property itself, according to all the appraisals of the property that were introduced into evidence, there were no adverse environmental conditions present on the property. Nor do the appraisals reference or demonstrate that the property was not preserved, maintained, repaired, or protected, or that any condition on the property impacted the property's value. While the July 8, 2021 appraisal obtained by the opposing heirs notes that there was "dump material" on the property, this is represented by a photograph of a single tire in brush/weeds. However, we cannot say that a single tire on the property demonstrates a breach of Vann's duty to preserve, repair, maintain, and/or protect the property of the succession.

Lastly, there is no evidence that Vann failed to pay the property taxes and Vann testified that all annual property taxes were faithfully paid. In this regard, the evidence admitted at the hearing on the second motion to remove demonstrates that property taxes were due on the property from 2012-2021, and that the full amount of the property taxes were paid each year by Vann or the other heirs.

Therefore, based on our review of the evidence from the second motion to remove, we find no testimony or evidence reflecting a breach of Vann's duty to preserve, repair, maintain, and/or protect the property. Thus, we cannot say that the trial court abused its discretion in denying the second motion to remove on this basis.

*Failure to Close the Succession and Other Grounds*

As previously noted, the opposing heirs also asserted in the second motion to remove the grounds that were set forth in the first motion to remove, which were

29

previously denied by the trial court. These grounds were Vann's failure to close the succession as soon as possible; his failure to deposit money he collected for the succession into a bank account; his failure to file an annual account; payment of debts of the succession without authorization; and his failure to post an adequate bond. We find no merit to any of these grounds or contentions.

As to Vann's alleged failure to close the succession, La. C.C.P. art. 3197 provides that "[i]t shall be the duty of a succession representative to close the succession as soon as advisable." The opposing heirs point out that the successions have been pending for over eighteen years. However, according to Vann, the family/heirs decided to close the succession by selling the land "inside of the family" and he was constrained to sell the property within the family; otherwise, he stated that he would have sold it in 2005. Vann further testified that no other sibling submitted a plan to resolve the succession within the six-month time period allowed by the trial court after the June 23, 2021 hearing on the first motion to remove, and the opposing heirs' testimony does not refute this. While Learinza testified that he made two offers to purchase the property in 2005 and 2009, he provided no details of these offers or his offered purchase price. Conversely, when Vann was asked if anyone else (besides Mary) offered money to purchase the property, he answered that no one offered any money whatsoever. Vann further stated that Learinza did not make an offer to purchase the property until recently.[16] There is no evidence of an offer to purchase the property by any other sibling at any other time.

The purchase agreement that Vann entered into with Mary was signed on June 15, 2021, and the property was sold to her in November 2021. On April 6, 2022, Vann filed the petition to file detailed descriptive list and proposed tableau of distribution, seeking to pay his administrative expenses and to distribute the net proceeds to the heirs. Notably, there was no showing that the assets of the succession depreciated during Vann's lengthy term as administrator. Rather, the evidence

---

[16] See footnote 15.

reflects that the property appreciated. In this regard, the March 1, 2005 appraisal (conducted just prior to the commencement of his administration) valued the property at $34,000.00 and the May 20, 2021 appraisal valued the property at $64,000.00. Thus, where no harm or prejudice to the succession was established by the lengthy administration and Vann was actively trying to close the succession, we cannot say that the trial court abused its discretion in failing to remove Vann as administrator for failing to close the succession.

Next, insofar as to the opposing heirs claim that Vann failed to open a succession account for funds collected from the other heirs, La. C.C.P. art. 3211 provides that "[a] succession representative shall be deemed to have possession of all property of the succession ...." Additionally, La. C.C.P. art. 3222, which is titled "Deposit of succession funds; unauthorized withdrawals prohibited; penalty," states, in pertinent part, that "[a] succession representative shall deposit all moneys collected by him as soon as received, in a bank account in his official capacity, ... and shall not withdraw the deposits or any part thereof, except in accordance with law." The opposing heirs contend that Vann's failure to open a succession account for funds collected *from the heirs* was a violation of La. C.C.P. art. 3222. Notably, however, the opposing heirs have not alleged that Vann failed to deposit succession funds into a bank account. In fact, Vann testified that there was no money available from the succession and there were no bank accounts. Moreover, he testified that the estate had not generated any income and that there were no monies received by or paid through the succession. We note that no evidence was offered by the opposing heirs to the contrary. Thus, the trial court did not abuse its discretion in denying the motion to remove on this basis.

With respect to Vann's failure to render an annual accounting of receipts and disbursements, La. C.C.P. art. 3331 provides that "[a] succession representative shall file an account annually and at any other time when ordered by the court...." Thus, La. C.C.P. art. 3331 imposes on the representative a duty to render an annual

31

accounting. **Cucchero**, 845 So.2d at 453. An account shall show the money and other property received by and in the possession of the succession representative at the beginning of the period covered by the account, the revenue, other receipts, disbursements, and disposition of property during the period, and the remainder in his possession at the end of the period. La. C.C.P. art. 3333. A full, true, and complete account of all assets and liabilities, and of the administration thereof is contemplated. La. C.C.P. art. 3333, Revision Comments—1960 (a). Louisiana Code of Civil Procedure article 3334 provides for removal of a succession representative who has failed to file an account after being ordered to do so by the court. In this case, the record does not establish that Vann was ordered by the court to render an accounting and failed to do so; thus, this article cannot provide the basis for Vann's removal as administrator.

However, a trial court has discretionary power under La. C.C.P. art. 3182 to remove a succession representative for failure to provide an annual account, even though he has not been previously ordered to do so. See **Succession of Roy**, 192 So.2d 603, 605 (La. App. 3rd Cir. 1966). As to whether the trial court abused its discretion in failing to remove Vann as administrator in this basis, there is no evidence of any succession funds or revenues having been received or administered by Vann, and there is no evidence of Vann's expenditure of succession funds at all or using such to satisfy any debt.[17] Vann testified that the estate had no debts and no charges against it other than attorney fees; the estate generated no income; there was no money available to the succession and it had no bank accounts. Vann testified that there was no accounting the he could possibly provide, as he never received any money and the estate never paid any money. The opposing heirs point to Vann's collection of money from the heirs to pay property taxes without rendering

---

[17] But c.f. **Cucchero**, 845 So.2d at 454 (affirming the removal of the succession representative for failure to file an accounting where she received court authority to pay attorney fees and expenses, and annual accounts would have showed money/property received at the beginning of each year, all revenues and disbursements during the year, and the amount remaining and would have allowed the trial court to compare payments made during the year to the value of the succession's assets, considering its concern over the amount of attorney fees incurred).

an accounting. However, the funds collected from the heirs were not succession funds subject to an accounting. Nevertheless, the evidence shows that the sums paid by the administrator and the sums collected from the other heirs were used to pay property taxes. Thus, the trial court did not abuse its discretion in failing to remove Vann as administrator for failure to file an accounting.

As to the opposing heirs' claim that Vann failed to obtain court authorization to pay debts of the estates, *i.e.* property taxes, in violation of La. C.C.P. art. 3301, which provides that "[a] succession representative may pay an estate debt only with the authorization of the court ....," nothing reflects that succession funds were used to satisfy property taxes; instead the funds used to pay the property taxes were funds from Vann and/or his other siblings.

Lastly, with respect to Vann's alleged failure to post an adequate security bond, La. C.C.P. art. 3151 provides, in pertinent part, that "... the person appointed administrator shall furnish security for the faithful performance of his duties in an amount exceeding by one-fourth the total value of all property of the succession as shown by the inventory or descriptive list." This article further provides that "[t]he court may reduce the amount of this security, on proper showing, whenever it is proved that the security required is substantially in excess of that needed for the protection of the heirs and creditors." When Vann opened the succession and sought to be appointed administrator, he requested a reduced bond, and the trial court ordered him to post a bond in the amount of $50,000.00. A document entitled "Succession Representative's Bond" was executed by Vann and Joanrita Morris. However, there is no evidence in the record as to the sufficiency of this bond. Notably, the failure to furnish security does not mandate the removal of the succession representative. See La. C.C.P. art. 3182. Accordingly, even if Vann's bond was insufficient, we cannot say that the trial court abused its discretion in failing to remove Vann as the administrator on this basis.

Therefore, we find that the trial court was neither manifestly erroneous nor clearly wrong in concluding that under the facts and law, the opposing heirs failed to show that Vann either breached his fiduciary duty to the succession or the existence of one of the grounds for removal as administrator. Further, we find that the trial court did not abuse its discretion in denying the second motion to remove. Accordingly the opposing heirs' supervisory writ application is denied.

## CONCLUSION

For all of the above and foregoing reasons, we dismiss the appeal of the January 17, 2023 judgment and we deny the application for supervisory writ filed by Levi Morris, Daisy Morris Carter, Learinza Morris, and Virginia Briggs Morris. All costs are assessed to Levi Morris, Daisy Morris Carter, Learinza Morris, and Virginia Briggs Morris.

**APPEAL DISMISSED; WRIT DENIED.**

| SUCCESSION OF | STATE OF LOUISIANA |
|---|---|

**SUCCESSION OF**

**DAISY LEE MORRIS,**

**WIFE OF/AND LEVI MORRIS**

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2023 CA 0575**
**and**
**2023 CW 0312**



**Holdridge, J., concurring.**

I respectfully concur with the majority opinion. I would decline to exercise this court's supervisory jurisdiction over the interlocutory judgment denying the motion to remove Mr. Morris as administrator of the succession. See **Triton Diving Services LLC v. Offshore Marine Service Association, Inc.,** 2023-0169 (La. App. 1 Cir. 9/21/23), ___ So.3d ___, ___. Pursuant to **Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc.,** 396 So.2d 878 (La. 1981) (*per curiam*), appellate courts should consider an application for supervisory writs when the trial court judgment is arguably incorrect, there is no dispute of fact to be resolved, and a reversal would terminate the litigation. The **Herlitz** factors are not met at this time. The only matters that appear to be left in the succession are for the trial court to rule upon the motion to traverse the sworn detailed descriptive list, the opposition to the tableau of distribution, and the accounting by the administrator, and then for a judgment of possession to be filed and signed. Removing the administrator at this point affects very little, and the relators are protected and have a right to present evidence if the distribution to the parties is incorrect or the accounting by the administrator is in error. If the other suit or suits involving the annulment of the sale are successful before the remaining items in the succession suit are accomplished, then the administrator's removal becomes an issue again. Since the appointment of the administrator is an interlocutory judgment, the removal of the administrator can be raised at the trial court. An appellate court will generally refrain from the exercise of its supervisory jurisdiction when an adequate remedy exists by appeal upon the

entry of the requisite final judgment. See **Boyd Louisiana Racing, Inc. v. Bridges,** 2015-0393 (La. App. 1 Cir. 12/23/15), 2015 WL 9435285, *4 (unpublished). This court's exercise of its supervisory review in this case would promote piecemeal review and infringe on the principles of judicial economy. **Burford v. Burford,** 2018-0558 (La. App. 4 Cir. 11/28/18), 259 So.3d 1086, 1089.